Sampson v. Mitchell.

SAMPSON *et al.* v. MITCHELL *et al.*, *Appellants.*

In Banc, December 4, 1894.

125   217
71a  550
125   217
144  272

1. **Trustee**: EX PARTE ORDER TO SELL PROPERTY: BENEFICIARIES. An order of the circuit court as a court of chancery, made on an *ex parte* petition by a testamentary trustee, authorizing him to incumber the trust property to pay taxes due thereon is void as against the beneficiaries as they were necessary parties to the proceeding.

2. **Trustee of Express Trust**: STATUTE: PARTIES. Revised Statutes, 1889, section 1991, providing that a trustee of an express trust may sue in his own name without joining the beneficiaries has no application to a proceeding like the foregoing, the object of which was to give the trustee powers not conferred upon him by the instrument creating the trust.

3. **Ejectment**: EQUITABLE DEFENSE: RES JUDICATA. While a judgment in ejectment against the defendant on an equitable defense is *res judicata* and may be so pleaded, yet to have that effect the answer must state facts which bring the defense under some head of equitable cognizance, and, *held*, that the answer, judgment on which was pleaded in bar in this case, did not set up an equitable defense.

4. **Equity**: RECOVERY OF TRUST PROPERTY: TAX LIEN: CONDITIONAL JUDGMENT. Where, in a suit by beneficiaries under a will to recover trust property on the ground that the deed of trust under which defendant purchased was void, the evidence shows that the money

borrowed on the deed of trust was applied to the payment of taxes due on the property, judgment for plaintiffs should be conditioned on their payment of the amount so used and this is true, although the defendant omitted in his answer to set up any claim for such lien and merely relied on his title under the deed of trust.

*Appeal from Audrain Circuit Court.*—Hon. E. M. Hughes, Judge.

REVERSED AND REMANDED.

*Turner, Hinton & Turner* for appellants.

(1) John H. Sampson, as the trustee of an express trust under the will of Richard Sampson, deceased, was the proper party to take such steps as might be necessary for the protection of the interests of his beneficiaries, when the trust property was threatened with a sale at a sacrifice under the tax judgment. R. S. 1889, sec. 1991; *Anderson v. Mather*, 44 N. Y. 249; *Clarke v. Van Surlay*, 15 Wend. 436; *Cochran v. Van Surlay*, 20 Wend. 375; *Pitcher v. Carter*, 4 Sand. Ch. 1. (2) The Boone circuit court sitting as a court of chancery, was the proper tribunal to direct the trustee as to his duty in this emergency not provided for by the testator. *Anderson v. Mather*, 44 N. Y. 249; *Clarke v. Van Surlay*, 15 Wend. 436; *Cochran v. Van Surlay*, 20 Wend. 375. (3) It was not necessary, in order to give the chancellor jurisdiction, that the trustee should have begun an action against his beneficiaries. The circuit court as inheriting the jurisdiction of the old high court of chancery, had peculiarly confided to its care and supervision the relation of trustee and *cestui que trust*, and the preservation of the estates of infants. The chancellor might, upon the *ex parte* application of the trustee, order such disposition of the trust property as he in a sound discretion might deem beneficial to the *cestui que trust*. *Anderson v. Mather*, 44 N. Y. 249; *Clarke v.*

*Van Surlay*, 15 Wend, 436; *Cochran v. Van Surlay*, 20 Wend. 375; *Pitcher v. Carter*, 4 Sand. Ch. 1. (4) The trustee in his *ex parte* application to the court, completely represented the beneficiaries. *Anderson v. Mather*, 44 N. Y. 249; *Clarke v. Van Surlay*, 15 Wend. 436. (5) When the circuit court, sitting as a court of chancery at April term, 1885, passed upon the trustee's petition and made the order or decree authorizing him to raise a loan by mortgage or deed of trust upon the property for the purpose of paying off the accrued taxes and the incumbrance placed upon the property under the order of the April term, 1878, it was a court of general and competent jurisdiction, dealing with a subject over which it had peculiar and inherent powers; the trustee representing the beneficiaries, was, at the instance of those who were of age, before the court, and the court was competent to decide whether the trustee did sufficiently represent the beneficiaries; it decided that point in the affirmative and entered the order, and such order is valid and binding. *Anderson v. Mather*, 44 N. Y. 249; *Clarke v. Van Surlay*, 15 Wend. 436; *Cochran v. Van Surlay*, 20 Wend. 375; Freeman on Judgments [3 Ed.], sec. 124 *et seq.*; Black on Judgments; *Castleman v. Relf*, 50 Mo. 583. (6) The whole case as submitted to the court showed that the plaintiffs were seeking equity without offering to do equity. Thomas W. Sampson, Jessie B. Sampson and all of the children who were of age had requested the trustee to proceed as he did. The taxes accruing against the trust property for twenty years had been paid off with the money borrowed by the trustee under the orders of the court. The money paid by defendant Mitchell was used to pay off these loans and yet plaintiffs do not offer to repay this money or any part thereof, not even the surplus that remained after satisfying the debt. *Bone v. Tyrrel*, 113 Mo. 175. "When one has paid off a

valid obligation which he was bound to meet, and has had the benefit of another's money advanced for that purpose, he shall not retain that benefit so as, in substance, to make another pay his debt." *Wenlock v. River Dee Co.*, L. R. 19 Q. B. D. 155. (7) The pleadings, motions, brief of counsel, and the official stenographer's notes of the testimoney in the ejectment suit between plaintiffs in this action and defendant Mitchell, were all admissible in evidence to show what issues were involved in the ejectment suit, and therein passed upon by the court. *Chouteau v. Gibson*, 76 Mo. 38; *Hickerson v. Mexico*, 58 Mo. 61. (8) An equitable defense was interposed in the ejectment suit, was passed upon by the court, and determined adversely to the plaintiffs in this action; and a judgment in that suit is a bar to a further litigation of the same matters between the same parties and their privies. *Chouteau v. Gibson*, 76 Mo. 38; *Preston v. Rickets*, 91 Mo. 320; *St. Louis v. Lumber Co.*, 98 Mo. 613; *Sutton v. Dameron*, 100 Mo. 141; *Blanchard v. Brown*, 3 Wall. 245. (9) In order to render a judgment in ejectment a bar to further litigation of the same matters, it is not necessary that an equitable defense should have been so interposed as substantially to convert the action into one in equity; not is it necessary that the equitable defense should have been set up as the basis of affirmative relief; it is sufficient if the equity was interposed merely defensively, and that there should have been an adjudication upon such equitable defense. *Chouteau v. Gibson*, 76 Mo. 38; *Company v. Tipton*, 113 Mo. 373.

*S. C. Major* and *Draffen & Williams* for respondents.

(1) The trustee, Sampson, clearly had no authority, of his own motion, to execute the deed of trust. **No**

such power was conferred upon him by the will of Richard Sampson, deceased. Upon the contrary, it is expressly provided, that the land in no event should be subject to any debts or liabilities not charged upon it by the will of the testator. *Price v. Courtney*, 87 Mo. 387; *Price v. Estill*, 87 Mo. 379; *Wood v. Kice*, 103 Mo. 329; 1 Beach on Modern Equity Jurisprudence, sec. 248. (2) A trustee may apply to a court of equity for directions, making the persons interested parties to the proceeding, and those made parties will be bound by the decree entered in the cause. Mitford & Tyler's Equity Pleadings and Practice, 227; *Hayden's Executors v. Marmaduke*, 19 Mo. 403; *Meddis v. Bull*, 18 S. W. Rep. 6; *Craig v. Wilcox*, 22 S. W. Rep. 76; *Covar v. Cantelou*, 25 S. C. 35; *Stansberry v. Inglehart*, 19 Wash. Law Rep. 594; Hill on Trustees, 845; Freeman on Cotenancy and Partition, 563. (3) The ejectment suit instituted by the defendant Mitchell, against these plaintiffs, is not a bar to this action. "The repeated rulings of this court are, that a judgment in an ejectment suit is no bar to a second action between the same parties for the same property, and this is true whether the titles and defenses are the same or not." "He who enters under such a judgment in truth and in substance, can only be possessed according to right. If he has a freehold, he is in as a freeholder. If he has no title, he in as a trespasser." *Kimmel v. Benna*, 70 Mo. 52; *St. Louis v. Lumber Co.*, 98 Mo. 613. (4) The circuit court properly refused to require the plaintiffs to refund to the defendants the money borrowed by the trustee. *Price v. Courtney*, 87 Mo. 387. Besides the pleadings did not make any such claim. *Sims v. Gray*, 66 Mo. 613; *Pitcher v. Carter*, 4 Sand. Ch. 1; Beach on Equity Practice and Pleading, sec. 428. The trustee could not be credited with penalties, interest and costs incurred through his negligence, and the same

should not be charged as an equitable lien on the land. *Booker v. Armstrong*, 93 Mo. 49; *Price v. Courtney*, 87 Mo. 387.

### DIVISION ONE.

BLACK, P. J.—Richard Sampson, of Boone county, died testate in 1863. By his will he devised to his son John H. Sampson the two hundred and forty acres of land now in question and certain personal property in trust for the following purposes: For the sole use "of my daughter-in-law Jessie B. Sampson and the children of her body begotten by son Thomas during her cohabitation with him * * * free from the debts, liabilities and control of her said husband as though she were a *femme sole.*" It is provided further that Jessie B. Sampson "shall have the privilege of renting or leasing the whole or any portion of said estate, for such terms and upon such conditions, as to her shall seem best, or of continuing the occupancy of the same upon the sole condition that she shall properly support, maintain and educate the children of herself and my son Thomas during that time." Power is given to her to sell the products of the farm and live stock that may be in the hands of herself, or said trustee, or upon said farm; and it is made the duty of said trustee, upon her written request, to execute any needful bill of sale. The will provides further that the real estate, slaves and personal property, not disposed of under the trust, shall be kept together and appropriated to the use of the family during the lifetime of Jessie B. and her husband. Should Jessie B. die leaving her husband Thomas surviving it is made the duty of the trustee to pay to him during his lifetime the rents and profits of the land, or to permit him to occupy the premises for the maintenance and support of himself and children without rendering any

account.   The will provides further that upon the death of Jessie B. and her husband, Thomas, the title to the land shall at once vest in the children of said Thomas and Jessie.

Jessie B. Sampson and her husband, Thomas, and their seven children commenced this suit in November, 1891, making Porter J. Mitchell and the trustee, John H. Sampson, defendants.   The petition sets out the will of Richard Sampson and avers that John H. Sampson accepted the trust; that plaintiffs are entitled to the use of the trust estate; that on the third of March, 1886, John H. Sampson conveyed the land to one Waugh in trust to secure $1,575, that Waugh sold the land under the terms of the trust deed and defendant Mitchell became the purchaser.   It is further averred that the trustee had no power to mortgage the land, that Mitchell is in possession, and that the trustee refuses to put plaintiffs in possession or to take any steps to assert their rights to the rents.   They pray that the deed of trust to Waugh and the deed to defendant be set aside; that the title be reinvested in the trustee; that a new trustee be appointed if necessary, and for possession.

The trustee filed no answer.   Mitchell, in his answer, admits the will, the execution and delivery of the deed of trust and trustee's deed and that he is in possession, but he denies the other averments of the petition.   For a second and further defense, he pleads a judgment of the Boone county circuit court, rendered in his favor in February, 1891, in a cause wherein he was the plaintiff and the plaintiffs in this suit were defendants.

The evidence in this case discloses the following facts:   While Jessie B. Sampson and her husband, Thomas W., were in possession of the land under the will they allowed the taxes and the interest and penalties thereon to accumulate for the years 1872 to 1876

both inclusive. The collector obtained judgment against the trustee and beneficiaries, enforcing the tax lien. Thereupon and in April, 1876, John H. Sampson presented to the circuit court a petition, stating that he, as trustee under the will of Richard Sampson, owed the state the taxes before mentioned, that the land produced nothing over the support of the beneficiaries, and that it was necessary to borrow money to pay the taxes, and asked leave to borrow money to pay them. The court on this petition directed the trustee to borrow money sufficient for such purpose and to secure the same by a mortgage or deed of trust. Pursuant to this order he borrowed $503.13, and secured the same by a deed of trust on the land, dated November 25, 1878. With the money thus raised he paid the taxes, interest and penalties thereon for the years 1872, to and including, 1877.

The taxes were allowed to go unpaid for the years 1878, to and including 1885, when the trustee presented another like petition to the circuit court, and the court made an order directing the trustee to mortgage the land for a sum sufficient to pay the prior deed of trust and the accumulated taxes. Pursuant to this order, he executed a second deed of trust to Waugh, dated the third of March, 1886, to secure the sum of $1,575, borrowed of Wm. McClure. With the money thus obtained he paid the first deed of trust and also the subsequent taxes.

The orders to borrow money on the land were both made on the *ex parte* petition of the trustee, John H. Sampson. None of the beneficiaries were before the court. He testified that Jessie B. and her husband requested him to procure the orders, and two or three of the children who were of age requested him to obtain the second order. The other children were then minors,

and all the children were minors when the first order was procured.

The land was sold under the last deed of trust, and the defendant Mitchell become the purchaser. Thereupon Mitchell commenced a suit in ejectment against all of the persons who are plaintiffs in this case. Mitchell obtained possession under the judgment in his favor in that ejectment suit.

On this evidence and that hereafter mentioned, the trial court gave judgment for the plaintiffs, setting aside the deed of trust to Waugh and his deed to the defendant and for possession.

1. The first question is whether the two orders of the Boone county circuit court, entered on the *ex parte* petition of the testamentary trustee, directing him to incumber the land to raise money to pay the taxes, are valid or absolutely void. The claim of the plaintiffs is that these orders are void because the beneficiaries were not parties to those proceedings.

It is to be observed at the outset that the testamentary trustee had no power under the will to incumber the land, so that the power, if any he had, depends wholly upon the orders of the circuit court. To uphold these orders the defendant has cited us to a number of cases.

The principal question considered in the cases of *Clarke v. Van Surlay*, 15 Wend. 436, and *Cochran v. Van Surlay*, 20 Wend. 365, was as to the validity of certain private acts of the legislature, authorizing the sale of land which had been devised to trustees, for the purpose of paying the rents, issues and profits to one Clarke during his life, and to convey the land to his issue at his death. The acts were upheld. The power of the chancellor under these acts was also considered and it was also held that any error committed by him could not affect the title of a *bona fide* purchaser in an

action of ejectment. In one of them it is said to be a settled principle that whenever property of infants consists of real or personal estate, the legal title to which is in trustees, the chancellor, as the general guardian and protector of all infants, may authorize such a disposition thereof as he may deem best in the exercise of a sound discretion. But we find nothing in these cases bearing upon the question of parties to a proceeding for the sale of such property.

It was held in *Anderson v. Mather*, 44 N. Y. 249, that a court of chancery has power to sell the estates of infants, of an equitable character, independent of any statute provision. The question in that case, which was an action of ejectment, related solely to the validity of the sale of the interest of a minor. The case shows that the court of chancery appointed a guardian for the minor in the very proceeding which resulted in the order of sale. That case is, therefore, not in point here. The same may be said of *Pitcher v. Carter*, 4 Sand. Ch. 1; for there the petition for leave to mortgage the property was presented by the trustee in his own behalf, and in behalf of the three infants as their next friend, and by the owner of the life estate.

It will be readily seen that these cases do not furnish any aid in the solution of the question now in hand.

It was observed by this court in *Hayden's Executors v. Marmaduke*, 19 Mo. 403, that a trustee, placed in circumstances in which he may have reasonable doubt as to the proper disposition of the funds in his hands, has the right to apply to a court of equity for directions, making the persons interested parties to the proceeding. It seems to be the general and well settled rule that in such cases all parties in interest must be brought before the court. Mitford & Tyler's Pleadings and Practice in Equity, p. 227; *Lomerson v.*

*Vroom*, 42 N. J. Eq. 290; *Gordon v. Green*, 113 Mass. 259.

Says Perry: "If no power of sale is conferred upon the trustee, courts of equity, upon cause shown, may decree a sale. "In such case all parties in interest should have notice, and parties not *sui juris* should have guardians *ad litem* appointed." Citing *Bush v. Bush*, 2 Duvall, 269; 2 Perry on Trusts [4 Ed], sec. 764. And it was said in *Meddis v. Bull's Adm'r*, 18 S. W. Rep. 6: "The chancellor having sold this realty, and the parties in interest being before the court, the purchaser, Meddis, acquires a good title."

In *Moseley v. Hankinson*, 22 S. C. 323, real property had been settled on a married woman "for her sole and separate use for life, and on her death, on her issue then living." The trustee and the married woman and her husband joined in an *ex parte* petition to a court of equity, praying that the trustee be authorized to sell the land and reinvest in other property. The court made the order, and the land was sold pursuant thereto. There were five children living at the time of filing the petition. Thereafter the children, or at least some of them, brought suit to recover possession of the land sold. It was held that the children were contingent, and not vested, remaindermen. It was further held, after a review of the authorities, that, as the children were *in esse* and within the jurisdiction of the court, they should have been made parties to the proceeding for the sale of the land. Says the court: "It follows, therefore, that the rights of these contingent remaindermen are not barred, nor are those of the unborn contingent remaindermen; for, as it was practicable to have made some of the class parties who could have represented the interests of those who could not be made parties, and this was not done, there was no one before the court to represent the

interests of the contingent remaindermen when there could have been; and as the exception to the general rule, by which it is allowable to proceed without making contingent remaindermen who are not *in esse* parties, seems to be based wholly upon considerations of necessity, this case does not fall within the exception, and hence the rights of none of the contingent remaindermen are barred." It was contended there, as it is here, that, as the fee was in the trustee and he was before the court, he could represent the interests of the remaindermen. But, after a review of the authorities in that state ,it was said: "The very object of applying to the court is to obtain authority for disposing of the interests of others, and those really entitled to such interests must, if practicable, be made parties to any proceeding by which it is proposed to dispose of their interests." That case was approved and affirmed in the later case of *Covar v. Cantelou*, 25 S. C. 35.

The general rule in equity is that all persons materially interested, either legally or beneficially, in the subject-matter of the suit should be made parties; and in cases of trust the general rule is that the beneficiaries in the trust are necessary parties. Story's Eq. Plead., sec. 207. There are several exceptions to this rule, one of them being that the trustee may sue to recover the trust property without joining the beneficiaries. After an examination of the text books and all the authorities to which we have been cited and many others, we can find no authority which brings this case within any recognized exception to the general rule. It is to be observed that the testamentary trustee had no power under the will to incumber the trust estate. A court of equity alone could give him that authority after a hearing of all parties in interest. These children and the adult beneficiaries were all within the

jurisdiction of the court, and should have been made parties to the proceeding in which leave was given to incumber the land. As they were not brought before the court they are not bound by the orders therein made. The orders to incumber the land are, as to the beneficiaries in the trust, absolutely void—void, even in a collateral proceeding.

Our statute, (section 1991, Revised Statutes, 1889,) declares that a trustee of an express trust may sue in his own name without joining the person for whose benefit the suit is prosecuted. This is but a legislative assertion of an established exception to the general rule before mentioned, and it has no application to a case like the one in hand, where the object of the suit is to give the trustee powers not conferred upon him by the instrument creating the trust. Had the circuit court caused the infant remaindermen to be brought before it when the application for the first order was made and appointed as their guardian *ad litem* some competent adviser, it can not be doubted that the court would have seen that the taxes should have been paid by the life tenant, and the trustee would have been informed that it was his duty to see that they were paid by her. The trustee in the will says the family consumed all the products of the farm so that he had nothing in his hands and we believe all he says on this subject. Had the income from the farm been four or five times what it was, the result at the end of each year would have been the same no doubt. The testator foresaw all this and undertook to provide for it by appointing a trustee to protect and preserve the corpus of the property, and this trust ought not to be destroyed by *ex parte* orders. The orders of the circuit court directing the trustee to incumber the property are, we repeat, void on the face of them.

2.   The next question is whether the judgment in the prior suit of ejectment brought by the defendant Mitchell against the plaintiffs here constitutes a bar to this suit.   The judgment in that case was, as has been said, in favor of the plaintiff there, the defendant here. It is well settled law in this state that a judgment in ejectment is no bar to a second suit between the same parties for the same property, and this is true, whether the titles and defenses in both actions be the same or not.   *Kimmel v. Benna*, 70 Mo.  52;  *St. Louis v. Lumber Co.*, 98 Mo. 614, and cases cited.   But it is insisted by the defendant that an equitable defense was interposed by these plaintiffs in the prior ejectment suit, that such defense was determined adversely to them, and that the judgment in that suit is, therefore, a bar here.   Under our code, the defendant in an ejectment suit may set up an equitable defense, and in many cases he may set it up either as a defense simply, or he may set it up with a prayer for affirmative relief.  *Harris v. Vinyard*, 42 Mo. 568;  *Seiberling, Miller & Co. v. Tipton*, 113 Mo. 381.   If the defendant sets up an equitable defense and there is a trial, and a judgment on it adverse to him, the judgment is final and conclusive, unless reversed on appeal or writ of error.   Such judgment may be pleaded in bar in a subsequent suit between the same parties concerning the same title. *Chouteau v. Gibson*, 76 Mo.  38;  *Preston v. Rickets*, 91 Mo. 320;  *St. Louis v. Lumber Co.*, 98 Mo. 615.   But it does not follow that the defense is an equitable one and the judgment, therefore, final simply because the defendant sees fit to set out his defense specially. *Hart v. Steedman*, 98 Mo. 452.   To constitute an equitable defense, the answer must state facts which bring the defense under some head of equitable cognizance.   To hold otherwise is to overrule that line of cases wherein

it is held by this court that a judgment in one eject-
ment suit is no bar to another like suit.

It is, therefore, essential to examine the answer filed
by Jessie B. Sampson and her children in the prior
ejectment suit.  In that answer they deny that plain-
tiff was entitled to the possession of the premises;
admit that they were in possession, but deny that they
unlawfully withhold the possession from the plaintiff.
They aver that Richard Sampson died testate seized of
the land, and then set out a copy of the will, and con-
clude with the statement that they are in possession of
the land as they have a right to be, and ask judgment
that they go hence with their costs.  There is not a
word said in the answer about the deed of trust from
the testamentary trustee to Waugh or from Waugh to
Mitchell.  It was admitted by the reply in that case
that Richard Sampson died testate as alleged in the
answer and that the will was correctly set out.  There,
as here, both parties claimed under the will, and the only
question in that case concerning the title was as to the
validity of the deed of trust from the testamentary
trustee to Waugh, and on the pleadings in that case that
was a pure question of law.  It must follow that the
judgment in that case is no bar to the prosecution of
this one.

3.  Although the deed of trust from the testamen-
tary trustee to Waugh to secure the $1,575 must be
held to be void for the reasons before stated, still it
may be that the defendant Mitchell is entitled to an
equitable lien against the estates of some, or possibly all,
of the plaintiffs, as the deed of trust was given to raise
money to pay taxes on the trust estate.  Considerable
time has been consumed in the investigation of this
branch of the case, but at every turn the objection is
made that the answer lays no foundation for such
relief.  If the defendant intended to assert such an

equitable lien, he should have framed his answer with that end in view. ' *Sims v. Gray*, 66 Mo. 613. He failed to set up any such claim in his answer, and we are, therefore, not at liberty to express an opinion upon this question. The answer sets up, it is true, title under the deed of trust to Waugh, but it does not state that the deed of trust was given to raise money to pay taxes on the trust property, nor does it state that the money was used for that purpose. The defense, and the whole defense, is based on the theory of a perfect title in the defendant Mitchell. The judgment is affirmed. All concur, execept BARCLAY, J., who dissents.

### IN BANC.

BURGESS, J.—I fully concur in all that is said by BLACK, C. J., in the foregoing opinion, with the exception of the third and last paragraph.

The proof clearly shows that the money borrowed by the trustee, Sampson, was applied to the payment of taxes which were a lien upon the land in question, and as plaintiffs received the benefit of the money thus paid which served to extinguish the liens they should in equity and good conscience be required to refund the same before taking possession of the land, and this, too, notwithstanding the answer sets up no such defense. That in this case would be but enforcing the old maxim that "he who seeks equity must do equity."

In order, therefore, to avoid another action by defendants against plaintiffs for the money thus borrowed and used by said trustee, the judgment should be reversed and the cause remanded, that the defendants may amend their answer if so inclined, setting up the payment of the money for the extinguishment of the tax lien, praying that an account be taken, in which they should be charged with the rent of the

property while in their possession and that the sum found due defendants, if anything, should be declared a lien upon the land, and that the plaintiffs' possession of the land be conditioned upon the payment to defendants of the amount due to them, if anything. The court should proceed to settle the controversy, and I think it may be equitably settled in the manner above indicated. SHERWOOD, MACFARLANE and GANTT, JJ., concur. BARCLAY, J., concurs in reversing and remanding the cause. BLACK, C. J., and BRACE, J., dissent.

### SEPARATE OPINION.

BARCLAY, J.—Without going into the question whether the orders of the Boone circuit court (purporting to authorize the loans secured by the deeds of trust) are valid as against those of the adult beneficiaries who requested the trustee, Mr. John H. Sampson, to apply for those orders, another phase of the case seems to me to commend the present appeal very strongly to favorable consideration upon grounds of substantial equity.

Under the ruling of a majority of this court in *Schanewerk v. Hoberecht* (1893), 117 Mo. 22, the legal title to the property passed from Mr. John H. Sampson by his deed to Mr. Waugh (the trustee in the later deed of trust) and from the latter to Mr. Mitchell, upon the sale after nonpayment of the loan apparently secured by that deed.

On his supposed title Mr. Mitchell sued the present plaintiffs in the ejectment case that has been mentioned.

For answer in that action, they entered a general denial of Mr. Mitchell's claim to possession, and then set up a defense, which recited those parts of the will of Mr. Richard Sampson creating a trust in the land in suit for their benefit, and declared that they were in

the possession and enjoyment of the premises as they had the lawful right to be.

To this answer Mr. Mitchell replied, admitting the allegations as to the trust under the will, and then adding some new matter which has not yet received all the notice it seems to me to merit.

In that reply are the following allegations which will be quoted at large, to avoid the possibility of any misinterpretation:

"The plaintiff avers and states that since the probate of said will the defendants, Thomas W. Sampson and his wife Jessie B. Sampson, and the other defendants, their children, as from time to time they were respectively born, have lived upon and enjoyed, and have been the pernors of the rents and profits of the premises in controversy, and the said children have been nurtured and educated out of the issues and profits thereof. He avers that the issues, products and profits thereof were applied by the said Jessie B. Sampson to the support and maintenance of herself, her said husband and children, and to the education of the latter, and to the payment of the annual taxes levied and assessed against said trust estate up to and including the year 1871. That since said year the whole of the rents and profits of said trust estate have been consumed in the support and maintenance of the said Jessie B. Sampson and her family and the education of their children aforesaid, leaving the annually accruing taxes and tax charges and penalties wholly unpaid. He avers that such a contingency as the nonpayment of taxes by the *cestuis que trust* occupying and enjoying the premises was not contemplated by the testator, when he made the will aforesaid, and he made no provision therein for the same, empowering said trustee John H. Sampson to use the rents and profits thereof in the discharge of such tax incumbrance. That by means

of the continuing nonpayment of said taxes, the for-
feiture, sacrifice and sale of the trust property, the
premises in controversy, to satisfy such tax charges,
was threatened by suit, as provided by law and other-
wise.    That, to prevent such sacrifice and to preserve
·the trust property, the said trustee John H. Sampson,
pursuant to his power and duty as testamentary trustee,
and under the directions and decree of the Boone cir-
cuit court, in the exercise of its power and jurisdiction
as a court of equity, from time to time borrowed money
by pledging under deed of trust the premises in con-
troversy, wherewith to pay off and discharge such tax
liens and incumbrances.

"That defendant Jessie B. Sampson and the other
defendants and *cestuis que trust* have since continued
to occupy and enjoy said premises, applying the issues,
rents and profits thereof to their support and educa-
tion, and have failed to apply the same, or any part
thereof to the payment of the mortgage debt, so as
aforesaid by John H. Sampson, the said testamentary
trustee, imposed thereon, or the interest thereon
accrued, or to the discharge of the annually accruing
taxes, so that James H. Waugh, the trustee in said deed
of trust, at the request of the holders of said mortgage
debt, on the fourteenth day of June, 1890, after due
and proper notice, and in manner and form as required
by the terms of said deed of trust, and the statute for
such cases provided, sold at public vendue all the
right, title and interest of the defendants, and of John
H. Sampson, testamentary trustee, of, in and to the
premises in controversy, at which sale the plaintiff
became the purchaser thereof.

"And he avers that by reason of the premises, and
of the deed of conveyance to him made by the said
trustee, Waugh, he was on the sixteenth day of June,
1890, the fee simple owner of and was then and is now

entitled to the possession of the lands in the petition described.

"Whereupon the plaintiff reaffirms the several allegations and averments of his original petition herein and prays judgment as therein demanded."

Upon the issues raised by the aforesaid pleadings that case was tried by the court, without a jury, and the substantial facts appearing in the suit at bar were all shown to the court then, and its judgment pronounced upon them.

The court found for the plaintiff, Mr. Mitchell, assessed his damages at $156, and the monthly rents at $20, and rendered judgment for plaintiff for possession and the damages, etc., as found.

That judgment was never appealed from. It became final in due course. Mr. Mitchell went into possession under it. He was in possession under it when this suit was begun.

The plaintiff's petition in this case is framed as a bill in equity asking for the cancellation of the deed of trust of Mr. John H. Sampson to Mr. Waugh and the deed from the latter to Mr. Mitchell and "that the legal title to said land be reinvested in a trustee, to be held under the terms of the will," etc.

The answer of Mr. Mitchell denies many of the allegations of the petition, and then sets up the former judgment as an adjudication of the same matters sought to be revamped in the petition herein.

This plea of *res judicata* is quite full and circumstantial, but its language need not be further dwelt upon.

The above is its substance. Its form is not questioned; but some of my learned brethren appear to consider that the facts do not sustain it.

What was the effect of the former judgment? It adjudged that Mr. Mitchell was entitled to possession, in view of the facts then before the court.

The answer in the former case which sought to avoid in equity his claim to possession (under his legal title) set up the terms of the will of Mr. Richard Sampson creating the trust, in which defendants were beneficiaries.

The reply thereto (which has been quoted) asserted, in substance, that the funds raised by the deed of trust had been used to discharge the liens of taxes and costs and interest thereon, as already indicated.

In equity those facts entitled plaintiff to claim possession of the land, at least until reimbursed from it for the amount of the tax liens and charges which his funds had liquidated.

Upon that state of the case a competent court pronounced judgment, after a hearing upon the merits, and awarded possession to plaintiff, Mr. Mitchell.

The effect of that judgment was to sanction plaintiff's possession as against the title interposed by the defendants based on the will.    That title was equitable in its nature, and the facts urged against it by the reply raised another equitable issue to meet the equitable title.

The proposition is not gainsaid that a judgment in ejectment is no bar to another such action.    But it is equally well settled that, where, in such a proceeding, an equitable title is pleaded and adjudged, the result can not be regarded otherwise than as a conclusive judgment on that title.

The rule as to an ordinary judgment in ejectment being no bar to other actions on the same title is itself exceptional, and depends for its maintenance on a close application of technical principles of the common law governing the action of ejectment at the time of its origin.    In many states the rule itself has been abolished or modified by statutes, as no longer in harmony with the demands of justice at the present day

With us no such change has occurred. It is not my purpose to question the force of the rule itself in Missouri. But it certainly should not be enlarged by construction.

The judgment in the former action determined that the defendants' (now plaintiffs') claim to possession of the estate as beneficiaries, under the trust created by the will, was not tenable, and that Mr. Mitchell was entitled to possession in view of the facts then submitted to the court.

That judgment certainly ought to be given the full force which its record imports as against a second litigation of the same equities. That proposition should be considered settled law in Missouri by the precedents on that point. *Chouteau v. Gibson* (1882), 76 Mo. 38; *Preston v. Rickets* (1886), 91 Mo. 320; *St. Louis v. Lumber Co.* (1889), 98 Mo. 613.

It is wholly immaterial whether that judgment was a correct or erroneous deduction from the pleadings and evidence in the former case. It is, nevertheless, conclusive upon the question whether or not the present plaintiffs were entitled in equity to possession on the facts then developed, which were substantially the same as those shown in this case—with the exception that, since that judgment, Mr. Mitchell has gone into possession and the judgment has become a finality.

But the observations just made are not to be taken as intimations that the former judgment upon the rights of the parties, as unfolded by the answer and reply in that case, is in any respect unsound as an expression of the doctrines of equity.

It then appeared, as it now appears, that the funds advanced by Mr. Mitchell (upon the faith and supposed security of the deed of trust, executed by the trustee) were applied by the latter to pay the state, and other, taxes due upon the property together with interest

thereon. The loans were made for that very purpose as appears by plain recitals in the deeds of trust, as well as by other evidence.

The trust estate was liable for the taxes upon it They were liens upon the land, paramount, by the terms of law, to any interest of the beneficiaries in the property.

Wherever the liability for these taxes may properly fall, as between the trustee and the parties beneficiary under Mr. Richard Sampson's will, there is no doubt in my mind that, as between all of them and Mr. Mitchell, who furnished (in the manner above described) the money to relieve the estate of the liens of those taxes, equity demands that the estate should stand good for the funds so furnished.

The principles of subrogation govern such a state of facts and indicate the remedy which equity applies thereto to avert a failure of justice. *Lanier v. McIntosh* (1893), 117 Mo. 508; *Gilbert v. Gilbert* (1874), 39 Iowa, 657; *Levy v. Martin* (1880), 48 Wis. 198; *Lockwood v. Bassett*, (1883), 49 Mich. 546; *Crippen v. Chappel* (1886), 35 Kan. 495; *Wenlock v. River Dee Co.* (1887), 19 Q. B. Div. 155; *Emmert v. Thompson* (1892), 49 Minn. 386.

The present plaintiffs (assuming now, without deciding, that the orders authorizing the incumbrance of the trust properly were void) could not be permitted, in a court of conscience, to recover the estate discharged of the tax liens which the funds of another have paid in such circumstances as this case exhibits.

Mr. Mitchell was no mere volunteer. He supposed his loan was protected by the security of the deed of trust, executed on the faith of a supposed order of court.

So the judgment in the former case has ample support in sound principle, as well as the force of a

final judgment on the equities of the parties to it. Mr. Mitchell has possession under it. He should, hence, be treated and considered as a mortgagee in possession until reimbursed for the taxes and liens which his advances to the trust estate have discharged. *Gooch v. Botts* (1892), 110 Mo. 419.

In the case at bar the defendant, Mr. Mitchell, did not set up the amount of those advances and ask to have them declared liens on the estate. His answer, however, admitted the statement in the petition that Mr. John H. Sampson, as trustee, had "encumbered said land by a certain deed of trust to James H. Waugh, trustee, for the purpose therein specified." That purpose, as shown by the deed of trust in evidence, was to pay the debt and interest secured by the first incumbrance given to meet the tax charges, and to pay like charges accrued before the last deed of trust was given.

But the answer of Mr. Mitchell further asserts that the matters and title set forth in the petition were adjudicated in the former action referred to—and he relies upon that judgment. In the pleadings in that case the fact of the advances to the trust estate appears fully, and it also appears that they were applied to meet the liens for taxes.

In this condition of the record and of the facts, defendant, Mr. Mitchell, is entitled in my opinion to retain possession until the advances for taxes and interest are repaid to him or are realized by him from the rents and profits. The former judgment did not wipe out the equity of plaintiffs to redeem upon the discharge of those proper and just burdens upon their estate. It only adjudged the right of possession at that time as between the equities set up by the parties then before the court.

Plaintiffs should be allowed to redeem the land on framing their pleadings to that end.

⟩  ·  The judgment in the circuit court in their favor was erroneous. It should be reversed and the cause remanded, so that the plaintiffs may then amend, if desired, and present a bill to redeem.

For these reasons my concurrence is given to the judgment of the court *in banc.*