THOMAS F. LEYDEN et al., Respondents, v. JAMES G. OWEN, Appellant.

St. Louis Court of Appeals, June 28, 1910.

1. CONTRACTS: Two Contracts Relating to Same Subject-Matter: Trusts: Trustee Accepting With Knowledge of Rights of Obligee Under Prior Contract. Owners of a patent and plaintiff contracted for the formation of a corporation with a capital stock of $250,000, to which the patent should be transferred, and for the issuance to plaintiff of 20,000 shares for his advancement of money for tests of the patent. Subsequently, one of the owners, in contemplation of death, assigned his interest in the patent to a third person, in trust, to organize a corporation and to transfer to the corporation the interest in the patent, and to transfer to plaintiff ten two-hundred fiftieths of the capital stock. The trustee accepted the trust with knowledge of the contract with plaintiff. *Held*, that plaintiff could enforce his contract against the trustee and others accepting any interest under the trust agreement with knowledge of his rights.

2. PARTIES: Necessary Parties: Persons Beyond Jurisdiction. The rule that all persons materially interested, legally or beneficially, in the subject-matter of a suit must be made parties, either as plaintiffs or defendants, however numerous, so that the decree may be complete between the parties, is subject to the exception that a person beyond the jurisdiction of the court

Leyden v. Owen.

may be omitted, where his interest in relation to the matter involved is such that a decree may be pronounced without affecting his rights.

3. **TRUSTS: Enforcement: Parties: Necessary Parties.** Howe and Owen, joint owners of a patent, and plaintiff contracted for the information of a corporation with a capital stock of $250,-000, of which plaintiff should receive 20,000 shares for his advancement of money for tests of the patent, and to which corporation the patent should be transferred. Subsequently, Owen, in contemplation of death, assigned his interest in the patent to a third person, in trust, to organize a corporation and to transfer to plaintiff and to Howe a part of the capital stock. The trustee accepted the trust with knowledge of the contract with plaintiff. *Held*, that plaintiff, seeking to enforce his rights under the original contract by compelling the issuance to him of the requisite amount of stock in the corporation organized, need not make Howe a party, since the court could render a decree settling the rights of plaintiff as against the third person without prejudicing the rights of Howe, though a part of the stock to which plaintiff would be entitled must come out of Howe's interest, for the latter could be pursued by plaintiff in an independent suit.

4. ———: ———: ———: **Necessity of Making Cestuis Que Trust Parties.** Where such trust agreement further provided that the trustee should hold the balance of the stock in trust for other designated persons, and plaintiff, in order to obtain his share of the stock pursuant to his contract with Howe and Owen, must obtain some of the stock held by the trustee for such designated persons, it was necessary to make such designated persons parties, since a decree against the trustee alone would force him to proceed in reference to the trust property in a manner which would expose him to a subsequent suit by the designated persons.

5. ———: ———: **Necessary Parties.** The rule that all persons legally or beneficially interested in the subject-matter of a suit must be made parties is subject to the rule that when beneficiaries of a trust are very numerous, or when the trustee is empowered by the instrument settling the trust to dispose of the trust property in an absolute manner, without the consent of the beneficiaries, the beneficiaries need not be made parties.

6. ———: ———: ———: **Trustee and Cestuis Que Trust Necessary Parties.** In suits affecting trust property, the trustee and *cestui que trust* are necessary parties, the former because he has a legal interest, and the latter because he has the equitable and ultimate interest to be affected by the decree; and this rule is in force under the code system of procedure, when the action is in the nature of a suit of equity.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. M. Kinsey*, Judge.

REVERSED.

*Chester H. Krum* for appellant.

(1) If this proceeding is founded upon the contract of February 19, 1902, it goes without saying that in the first place no relief can be had against the appellant, James G. Owen, who was not a party to that contract and who derived no benefits from it, and no enforcement of the contract can be thought of in equity, or otherwise, unless the defendant Howe and the representatives of E. C. Owen were before the court. It is idle to say that the representatives of E. C. Owen can be affected or concluded by a proceeding to which they are not parties, or that a proceeding against one who holds property in trust for them is of itself notice to them so that a conclusion reached will be binding upon them in some or any respect. (2) As the appellant James G. Owen is not a party to the contract of February 19, 1902, and there is abundant property out of which to decree specific performance as to E. C. Owen and his representatives, whatever is to be taken for the purpose of such specific performance should be taken from the portion of E. C. Owen. (3) In a decree of specific performance of a contract, regard is to be had only to the terms of that contract, and the contract of February 19, 1902, limited as it was to the creation of a corporation of two hundred and fifty thousand dollars capital, cannot be enlarged by reference to some contract executed afterwards, as, for instance, the contract of April 29, 1902. This is not the case of performance of a contract executed after the contract of February 19, 1902, where under proper circumstances reference may be had to the antecedent contract, but it is sought to specifically enforce the contract of February 19, 1902, and to improp-

erly give effect to that contract by interpolating into it a contract which was afterwards executed and which had no existence at the time of the execution of the contract sought to be enforced. It is, therefore, wholly immaterial what the intention of the parties was at the time when the contract of April 29, 1902, was entered into. In the case of the performance of the contract of April 29, 1902, reference might properly be had to the antecedent contract of February 19, 1902, but the earlier contract cannot be aided or enforced by reference to the later contract. (4) The appellant submits that the respondent is not only without remedy except under the literal terms of the contract of February 19, 1902, but began his suit in a jurisdiction where no control could be had over the parties who were absolutely unnecessary to an equitable determination of matters in controversy. These persons, as shown by the process sought by the respondent under his amended petition are all residents of Madison county, Illinois, where this suit, if it had any merits at all, should have been brought.

*Luke E. Hart* and *Richard C. Hart* for respondent; *Joseph L. Hornsby* of counsel.

GOODE, J.—A petition in the nature of a bill in equity was filed against James G. Owen, Andrew F. Howe, Hattie Owen and James G. Owen, Jr., but was dismissed before judgment as to all the defendants except James G. Owen; that is to say, dismissed voluntarily by plaintiff against Andrew Howe, Hattie Owen and James G. Owen, Jr., and a decree taken against James G. Owen alone. In February, 1902, Andrew F. Howe and Elmo C. Owen (brother of James G. Owen, husband of Hattie Owen and father of James G. Owen, Jr.) were joint patentees and owners of the entire right, title and interest in and to letters patent of the United States, No. 678619, for an improvement in Ball Bearing Journal Boxes for Railroad Cars. The patentees

were without money to prove the invention by tests and thereby give it a commercial value, and to procure money for that purpose, on February 19, 1902, they entered into a contract with plaintiff, Thomas Leyden, which recited the ownership of the letters patent, the lack of means of the inventors to utilize their device commercially, that they were anxious to equip a railway car with the ball-bearing journal boxes for the purpose of making service tests of them, and that Leyden was anxious to advance the money for the tests in consideration of Andrew Howe and Elmo Owen assigning their interest in the patent to a corporation which should be formed, of the capital stock of which Leyden should receive a portion. The contract then provided that Leyden should advance to said Howe and Owen the money needed to make ball-bearing journal boxes and equip one car, to an amount not in excess of five thousand dollars. Other terms occurred in the contract not relevant to the present case, and then followed in substance these: The parties to the contract, Leyden, Howe, and Owen, agreed they would organize and form a stock company after test had been made of the device, put the capital stock of the company at $250,000 par value, issue non-assessable shares to the amount of $20,000 par value to Leyden in consideration of the $5000 advanced by him as aforesaid, issue shares to the par value of $135,000 to Howe and Owen, to be divided equally between them in consideration of their assigning their right, title and interest in and to the letters patent to the corporation; agreed further the remainder of the capital stock of the par value of $95,000 should be placed on the market and the proceeds turned into the treasury of the corporation to form a working capital. Said contract, of which we have recited the portions material to the present case, was duly signed and acknowledged by the parties. Shortly afterwards Elmo C. Owen, one of the patentees, became dangerously ill and had to undergo an operation for appendicitis in a hospital in Chicago, Illinois, and

he died from the operation. Immediately before it was performed and while he was on the operating table, he executed an instrument to his brother James G. Owen of the following tenor:

"For and in consideration of one dollar and other good and valuable considerations, receipt of which is hereby acknowledged, I hereby transfer, assign and set over to James G. Owen, my undivided half interest in and to a certain patent and invention No. 678,619, on a ball journal bearing for railroad and street cars, etc., issued to A. F. Howe and E. C. Owen, July 16, 1901. In trust for the following purposes:

"1st. Said James G. Owen shall organize a corporation and transfer to said corporation my undivided interest in and to said patent and invention, and the transfer by said A. F. Howe to said corporation of his undivided one-half interest in and to said patent and invention, in consideration for the entire capital stock, that is for said entire patent interest of said Howe and Owen.

"2d. To transfer to T. F. Leyden 10|250 of said capital stock. Said Howe to transfer from his capital stock a like proportion, both in consideration of the advance by said Leyden of $5000 as demanded.

"3d. From the stock in said trustees' hands 5|500 to be transferred to W. W. Wilcox. Said Howe to transfer a like amount in consideration of services rendered.

"From the balance of said capital stock in said trustees' hands, he shall retain as his own personal property 21 2-3|250 out of said capital stock and said Howe shall transfer a like amount to said James G. Owen in consideration of services rendered and to be rendered in the organization and promotion of said company. The balance shall be held by him in trust for Mrs. Hattie Owen and child, James G. Owen, Jr., as their interest may appear, during the full term of patent, reissues, etc.

"Dated Chicago, Illinois, April 29, 1902.

ELMO C. OWEN.

"Attest: F. M. Williams, A. F. Howe.

"I hereby consent and agree to the above conditions this 29th day of April, 1902.

"It is hereby agreed by and between said trustee and A. F. Howe and James G. Owen individually, that the stock held by them shall not be assigned, transferred nor hypothecated by either or any of them, under any conditions, without mutual consent in writing, duly signed by them; the purpose being to retain control of said company in our own hands.

April 29, 1902.        "JAMES G. OWEN, Trustee,

"JAMES G. OWEN,

"A. F. HOWE."

After the death of Elmo C. Owen, his brother James G. Owen, defendant herein, formed a corporation under the laws of the State of Maine, known as the Howe and Owen Ball Bearing Company, with a capital stock of $1,000,000, divided into 10,000 shares of the par value of $100 each, and stood ready to assign to said corporation the half interest in the letters patent which had been assigned to him by his brother Elmo C. Owen. He demanded of Howe that the latter assign to the corporation Howe's interest in the letters patent, all in accordance with the contract of April 29, 1902. Howe refused to make the assignment and the result was the commencement of a suit in equity by the Howe and Owen Ball Bearing Company against Howe in the United States Circuit Court of this district, to compel him to do so. To that suit plaintiff Leyden was a party, as was also a man named Wilcox, who had a slight interest in the patent, not necessary to be noticed in the present case. The litigation in the Federal courts ended in the affirmance by the Federal Court of Appeals, of a decree compelling Howe to assign his interest in the letters patent to the corporation and directing the corporation to

issue to James G. Owen as trustee for Hattie Owen and James G. Owen, Jr., and to Andrew F. Howe, each 5000 shares of stock of the par value of $500,000 in full payment for the assignment to the company of their respective interests in the letters patent. The decree further directed both Howe and James G. Owen to transfer to Thomas Leyden in conformity to the contract of April, 1902, 10|250 of the shares received by said Howe and James G. Owen, or 20|250 in all, directed Howe to transfer to James G. O'wen twenty-one and two-thirds two hundred and fiftieths of the stock received by said Howe from the corporation and decreed that James G. Owen should hold as his own property, of the shares issued to him by the corporation, the like number of shares. It was provided the decree should not be binding upon Howe unless he accepted the stock adjudged to him and there is no proof he did. This matter will be understood better upon reading the opinion delivered in the case of Howe v. Howe and O'wen Ball Bearing Company, 154 Fed. 820. It will be perceived there are material differences between the contract of February 19, 1902, entered into by plaintiff, Thomas Leyden on one side and Andrew Howe and Elmo C. O'wen on the other, and the contract or instrument executed by Elmo C. Owen on April 29th and consented to by Andrew Howe. By the instrument of April 29th it was provided Leyden should receive from Andrew Howe 10|250 of the capital stock of the proposed corporation, and the like amount of said capital stock from James G. O'wen, trustee for Hattie and James G. Owen, Jr., wife and child of Elmo C. Owen; whereas in the contract of February 19, 1902, it was provided Leyden should receive $20,000 worth of full paid, non-assessable stock of the corporation, whose capital stock should be $250,-000. Moreover, the contract of the earlier date provided that $95,000 out of the $250,000 of the capital stock should be treasury stock, whereas the later contract said nothing about treasury stock. Under the earlier

agreement, to which only Leyden was a party, there was
to be issued only $155,000 of stock of which Leyden
would receive $20,000 or 20|250 or 12 28|31 per cent of
the issued stock. According to the agreement of April 29,
1902, to which he was not a, party, he would receive
10|250 of the amount of shares of stock issued to An-
drew Howe and to James G. Owen as trustee, and as each
of those parties received 5000 shares of stock, Leyden
would receive from each 200 shares or 400 shares in all,
or four per cent of the entire capital stock of $1,000,000.
That is to say, under the earlier contract Leyden was en-
titled to receive 12 28|31 per cent of the issued stock,
whereas under the later contract he was entitled to re-
ceive four per cent. The petition in this case sets out the
contracts substantially as we have related them, averring
Leyden complied fully with his agreement to advance
$5000 for use in testing the Ball Bearing Journal Boxes
as the proof shows he did; alleges the two contracts
according to their terms and that all parties intended
the instrument of April 29th should provide regarding
Leyden's interest in the corporation and the number of
shares he should receive, exactly as had the instrument
of February 19th, but that in the haste and confusion
due to the imminent peril of Elmo C. Owen, a mistake
was made in drawing the later paper and it provided
contrary to the will and intention of the parties concern-
ing Leyden's shares. The petition further alleges the
organization by defendant of a corporation with a capi-
tal stock of $1,000,000 pursuant to the contract of April
29, 1902; that Howe and defendant were about to
assign and convey the letters patent to the corpora-
tion and said corporation was about to issue to them
its entire capital stock of 10,000 shares, to-wit, 5000
shares each; that Andrew Howe was about to transfer
to James C. Owen, 21 2-3|250 of the shares of stock he
would receive from the corporation, or 433-1|3 shares of
the par value of $100 each; alleges plaintiff had often
demanded of Owen and Howe that when the stock of

the corporation was issued they should issue to plaintiff the proportion of stock to which he was entitled; that James G. Owen should transfer to plaintiff stock of the par value of $64,516, and Howe should transfer to plaintiff the like amount of stock, as in equity and good conscience they were bound to do; alleges further Hattie Owen and James G. Owen, Jr., claimed some interest in the stock of the corporation about to be organized and they were named parties in order that they might assert their claims; that Owen was confederating with parties unknown to plaintiff to cheat plaintiff out of his stock, and to increase the capital stock of the company, and distribute it so as to lessen the value of plaintiff's interest; that Owen had refused to transfer any stock to plaintiff and retained the whole stock issued to him, held the same as his own and unless restrained would continue to do so. The prayer of the petition was for a writ of injunction to restrain Owen from in any manner disposing of such an amount of the capital stock of the Howe and Owen Ball Bearing Company as would reduce the amount of the capital stock remaining in his hands to less than the par value of $129,032, or double the amount of the stock plaintiff is entitled to out of the shares which would be transferred to James G. Owen, to restrain said Owen from voting the stock; that he be decreed to hold the proportion of the stock to which plaintiff is entitled or $64,516, as trustee for plaintiff, that defendant Andrew Howe be decreed to hold a like amount of stock as trustee for plaintiff, and for other proper relief. The allegations and prayer of the bill indicate it was filed before the stock of the Howe and Owen Ball Bearing Company had actually been issued and was intended to tie up in the hands of James G. Owen, who was the active party in promoting the corporation, and in Howe after his stock was issued to him, enough of the shares for plaintiff to receive the proportion of the capital stock he was entitled to under the contract of February 19, 1902. The court entered a

decree reciting the case had been dismissed as to Howe (it previously had been dismissed as to Hattie Owen and James G. Owen, Jr.) and concluded as follows:

"The court doth thereupon order, adjudge and decree, that defendant James G. Owen be and he is hereby perpetually enjoined and restrained from selling, assigning, transferring or in any other manner disposing of or causing to be disposed of to any person, firm or corporation, other than to said plaintiff Thomas F. Leyden, six hundred and forty-five and 5|31 (645 5-31) shares of the capital stock of said Howe and Owen Ball Bearing Company, a corporation, of the par value of one hundred dollars ($100) each amounting in the aggregate to sixty-four thousand five hundred and sixteen and 4-31 ($64,-516 4-31) par value, which has been issued to him as aforesaid, and that said defendant James G. Owen be and he hereby is perpetually enjoined and restrained from either directly or indirectly voting at any meeting of the shareholders of said company the said shares of stock.

"And the court doth further order, adjudge and decree that said defendant James G. Owen now holds title to six hundred forty-five and 5-31 (645 5-31) shares of the capital stock of said Howe and Owen Ball Bearing Company, of the par value of sixty-four thousand five hundred and sixteen and 4-31 dollars ($64,516 4-31) as trustee for said plaintiff Thomas F. Leyden, and the court doth further order, adjudge and decree that said defendant James G. Owen within ten days from and after the entry of this decree make, execute and deliver to plaintiff Thomas F. Leyden a full and complete assignment of the capital stock of said corporation so held by him as trustee for said plaintiff, and that the plaintiff recover of said defendant James G. Owen his costs and charges in this behalf expended and that execution issue therefor."

From this decree defendant James G. Owen appealed.

The theory of the suit is that plaintiff is entitled to receive of the capital stock of the Howe and Owen Ball Bearing Company, which was placed at $1,000,000 under the contract of April 29, 1902, the same proportion of shares he would have been entitled to, if the capital stock had been placed at $250,000, pursuant to the contract entered into on February 19th, between him, Elmo C. Owen and Howe; that is to say, he is entitled to 12 28|31 per cent of the capital stock; that this was the intention of the parties to the contract of April 28th, and they intended so to provide, but through inadvertence failed to follow the terms of the previous contract. This suit is really intended to enforce specifically plaintiff's rights under the first contract on the ground that the second one was executed by all the parties to it, including defendant James G. Owen, with full knowledge of the existence of the first contract and of plaintiff's rights thereunder. It is contended for defendant the first contract cannot be enforced against him because he was no party to it; but we hold otherwise, for it was clearly established he knew well its terms when he accepted the trust and other terms of the instrument of April 29th; was clearly established, too, that at said time it was the intention of Elmo C. Owen, Howe and defendant, to accord plaintiff the same proportionate rights and interests in the corporation when the provisions of that instrument were carried out, he would have received if the provisions of the earlier contract had been carried out, and that no one thought of depriving him of any right or interest. Defendant James G. Owen and Andrew F. Howe both understood matters that way, and probably plaintiff would have been given his full interest if a controversy had not sprung up between Howe and Owen following Howe's refusal to assign his interest in the letters patent as he had agreed to do. His obligation was enforced by the Federal court, as we have seen; but for some reason plaintiff's stock was not issued to him, wherefore this suit was instituted.

Whoever was given and accepted any interest under the contract of April 29th, having acquired the interest with knowledge of the rights of plaintiff, is answerable to a suit for their enforcement. [Farrar v. Patton, 20 Mo. 81; 26 Ency. Law (2 Ed.), 126 and cases cited; Waterman, Spec. Perf., sec. 64; Bispham, Equity (6 Ed), sec. 365; 2 Story, Eq. Jur. (3 Ed.), sec. 788, *et seq.*]

The suit was filed against all the proper and necessary parties, including Andrew Howe, Hattie Owen and James G. Owen, Jr., but, as stated, was dismissed as to every one except the present defendant (appellant James G. Owen) and the question is whether judgment could be given against him only. In treating this inquiry it is well to recur to the general rules concerning parties to suits in equity, and it will be found the chief principles underlying those rules are these: It is the policy of equity to bind everybody by the decree in a suit who has any right or interest in the subject or object of the suit, which, if he was left free, he might thereafter assert to the prejudice of the parties bound to perform the decree; that is to say, to leave no one exempt from the force of the decree who by subsequently bringing forward some claim against the parties to the litigation, might cause them to suffer a loss in consequence of having done what the court ordered. It is also the policy of equity to do justice as a whole instead of by piecemeal. But the most fundamental and controlling doctrine of equity procedure is that no decree will be entered which will materially and necessarily affect any person's interest in the property involved in the litigation, unless he has been made a party to the suit and afforded the opportunity to be heard in defense of his rights. Those doctrines have given rise to the rule "that all persons materially interested, either legally or beneficially, in the subject-matter of a suit, are to be made parties to it, either as plaintiffs or as defendants, however numerous they may be, so that there may be a complete decree, which shall

bind them all." Still treating the same matter, the text
we have been quoting from continues: "By this means,
the court is enabled to make a complete decree between
the parties, to prevent future litigation by taking away
the necessity of a multiplicity of suits, and to make it
perfectly certain, that no injustice is done, either to the
parties before it, or to others, who are interested in the
subject-matter of the decree, which might otherwise be
grounded upon a partial view only of the real merits.
When all the parties are before the court, the whole
case may be seen; but it may not, where all the conflict-
ing interests are not brought out upon the pleadings
by the original parties thereto." [Story, Eq. Plead.
(10 Ed.), sec. 72; Gregory v. Stetson, 133 U. S. 579;
Barney v. Baltimore City, 6 Wall. (U. S.) 280; Poor
v. Clark, 2 Atk. 515.] The rule in England regarding
the necessity of making all persons parties who are ma-
terially interested, has been relaxed less than it has been
in this country, because of the difference in the terri-
torial jurisdiction of equity courts in the two countries.
[Story, Id.] Sometimes it was found impossible to make
every person in interest a party without ousting juris-
diction of the particular state or Federal court over
the litigation and thereby preventing a measure of jus-
tice from being decreed, when certain of those persons
might be omitted·as parties without prejudice to their
rights. By reason of this fact the practice in the United
States permits the omission from the suit of persons
who would be necessary parties if within reach of the
court, when they are beyond its reach, if their interest
in and relation to the property involved is such that
a decree can be pronounced in the case without affecting
their rights, yet settling the interests and rights of per-
sons who can be brought before the· court. [Cameron
v. M'Roberts, 3 Wheat. 951; Shields v. Barrow, 17 How.
(U. S.) 140; Barney v. Baltimore, 6 Wall. 284;
Chadbourne v. Coe, 51 Fed. 479.] The rule that per-
sons who are materially interested but not in such a

way that no decree can be pronounced without affecting their interest, may be omitted from the record as parties when it is impossible to obtain jurisdiction over them, has been developed to prevent the failures of justice which otherwise would often occur. [Story, sec. 77, *et seq.*] But it must be borne in mind the exception to the general rule that all persons materially interested must be made parties, is allowed on account of inability to obtain service within the jurisdiction of the court on some persons who have an interest in the subject-matter, and only when their interest is of a kind that "will not be prejudiced by the decree, and when they are not indispensable to the just ascertainment of the merits of the case before the court. . . . But if such absent persons are to be active in the performance or execution of the decree; or if they have rights wholly distinct from those of the other parties; or if the decree ought to be pursued against them; then the court cannot properly proceed to a determination of the whole cause without their being made parties. And under such circumstances, their being out of the jurisdiction constitutes no ground for proceeding to any decree against them or their rights or interests; but the suit, so far at least as their rights and interests are concerned, should be stayed; for to this extent it is unavoidably defective. In many instances the objection will be fatal to the whole suit. In others, it will not prevent the court from proceeding to the decision of other questions between the parties actually before it, even though such a decision may incidentally touch upon, or question, the rights of the absent parties." [Story, sec. 81, and cases cited.]

With these principles in mind let us proceed with the inquiry regarding who were "indispensable parties" to this case, according to the Federal nomenclature, or, what is the same thing, who were "necessary parties" according to the term commonly used in equity procedure. If Andrew Howe was outside the territorial juris-

diction of the court below, he could be omitted as a party defendant, because it was possible to render a decree settling the rights of plaintiff against James G. Owen and his *cestui que trustent,* Hattie Owen and James G. Owen, Jr., without prejudicing the rights or interests of Howe. It is true one-half the stock to which plaintiff is entitled must come out of Howe's interest; but the latter can be pursued by plaintiff in an independent suit in the jurisdiction where he resides; hence we think he is not an indispensable party.

The inquiry will be directed next to the effect of the dismissal of the action as to Hattie Owen and James G. Owen, Jr., for whom defendant held in trust all the stock acquired by him from Elmo C. Owen by the instrument of April 29th, except his (defendant's) individual portion. According to the decree of the Federal court, his personal interest is 21 2-3|250 of the shares going to Andrew Howe and the same proportion of the shares of Elmo C. Owen, or 43 1-3|250 of the capital stock of the corporation, amounting, as we calculate, to 1733 1|3 shares of the par value of $173,333-1|3. We have said the instrument of April 29th declared defendant's proportion of the stock should be transferred to him from the holdings of Elmo C. Owen and Andrew Howe for services rendered and to be rendered by defendant in the promotion of the company. It will be observed said instrument did not say any part of the shares plaintiff Leyden would receive should be allotted out of the shares going to defendant for services. On the contrary, said instrument provided that half of plaintiff's shares should be transferred to him from the interest of Elmo C. Owen and half from the interest of Howe (making a like provision as to the shares of Wilcox); that from the balance of the stock left in defendant's hands after those allotments, he should retain the shares to which he was entitled personally for services, and should hold the final balance in trust for Hattie Owen and James G. Owen, Jr. It follows that whatever shares plaintiff is

entitled to receive from those transferred to defendant by Elmo C. Owen, will be taken out of the shares defendant holds, not in his personal capacity, but as trustee for Hattie Owen and James G. Owen, Jr.; in other words, will cut down the number of shares the latter persons will enjoy as beneficiaries of the trust created by the instrument of April 29th. The judgment of the court below compels defendant to hold shares to the value of $64,516, as trustee for plaintiff until defendant shall have executed and delivered to plaintiff an assignment of shares of that par value. If it is intended said proportion of stock shall be taken from the personal holdings of defendant, the decree is without warrant in law, because plaintiff has no claim against defendant personally, but only as trustee. If the shares are to be taken from those held by defendant as trustee for Hattie Owen and James G. Owen, Jr., they will be deprived of shares to that amount by a judgment given in a suit to which they are not parties, and wherein they had no opportunity to be heard. This decree materially affects their rights and interest in the subject-matter of the litigation and therefore they are indispensable parties, for we have seen that all persons, either legally or beneficially interested, should be made parties. Certain exceptions are allowed to this rule when the beneficiaries of a trust are very numerous or when the trustee is empowered by the instrument settling the trust, to dispose of the trust property in an absolute manner without the consent of the *cestuis que trust,* and in other cases like executors and administrators whom the law invests with authority to represent the distributees and creditors of estates. None of those exceptions is applicable to the instant case, and so it must be governed by the ordinary rule about the necessary parties to suits respecting trust property when brought against trustees; and this is "that the *cestuis que trust* (or beneficiaries) as well as the trustees are necessary parties. . . . The trustees have a legal interest and therefore they are

necessary parties. The *cestuis que trust* (or beneficiaries) have the equitable and ultimate interest to be affected by the decree, and therefore they are necessary parties." [Story, sec. 207; see, also, sec. 208; Tysom v. Applegate, 40 N. J. Eq. 305; Boydan v. Parkridge, 2 Gray 190; Bank v. Crafts, 145 Mass. 444.]

The instrument of April 29th conferred on defendant no power to dispose of the shares he held in trust for Hattie Owen and James G. Owen, Jr., but merely said he should hold the balance of the shares left in his hands after Leyden, Wilcox and himself had been allotted their proportion "in trust for Mrs. Hattie Owen and child, James G. Owen, Jr., as their interests may appear during the full term of the patent, reissues, etc." If defendant was compelled by the decree in this suit to transfer to plaintiff a portion of the shares held in trust for said beneficiaries, the latter might thereafter call him to account, for their rights would not be concluded by the decree in the present case. That is to say, the decree would force defendant to proceed in reference to the trust property in a manner which would expose him to a suit hereafter by the *cestuis que trust,* and this is contrary to the procedure in equity. [1 Danial, Chancery, 284; Wendell v. Van Rensellear, 1 John. Chan. 149; Stebbins v. St. Anne, 116 U. S. 386; McArthur v. Scott, 113 U. S. 240, 294.] The rules we are invoking in regard to the necessity of making the beneficiaries parties, are in force under the code system of procedure when the action is in the nature of a suit in equity. [Bliss, Code Plead. (3 Ed.), sec. 109b; Sampson v. Mitchell, 125 Mo. 217, 28 S. W. 768; Dillon's Admr. v. Bates, 39 Mo. 293; Voorhis v. Gamble, 6 Mo. App. 1; Miller Lumber Co. v. Oliver, 65 Mo. App. 435, 438.]

We consider this to be eminently a case in which a court should refuse to decree the relief prayed in the absence from the record of persons whose property would be taken in the enforcement of the decree; wherefore the judgment is reversed. All concur.