## ODESSA LEE HENRY and O. B. HENRY v. BANK OF WENTWORTH, C. W. MOODY et al., Appellants.

Division Two, March 4, 1924.

1. **DEED OF TRUST: Purpose.** The facts of this case show that a second deed of trust was executed for the purpose of taking the place of an existing deed of trust, and not to be held as collateral security for the payment'of an unsecured debt of one of the mortgagors.

2. ———: ———: **Cancellation.** If a deed of trust was given to take the place of an existing deed of trust, with no further agreement, that of necessity required the cancellation of the existing mortgage.

3. ———: **Condition: Affirmative Defense.** An affirmative defense, pleaded by a bank to a suit brought by the warrantors of title who claim that a note secured by a deed of trust had been paid and to cancel the deed of trust, that the condition on which the deed of trust was taken up and re-placed by another was that it was to be held by the bank as collateral security for the payment of an unsecured debt of one of the mortgagors, must be proved by the bank. And in this case the mortgagors have proved beyond reasonable dispute that the agreement was that the second deed of trust was given to take up and re-place the first, and the evidence of the bank to establish the condition which it attempts to attach to the agreement, that the second deed of trust was to be collateral security for the unsecured debt, is unsatisfactory, and totally fails to show that the mortgagors ever consented to such condition.

4. ———: **Agreement: Mutual Consent: Misunderstanding.** It is not sufficient to prove that one party understood that a material condition was attached to an agreement and that the paries misunderstood each other. The minds of both parties must have met upon the condition, and both must have understood it alike.

5. ———: **Warrantors: Right to Sue: Outstanding Deed of Trust.** The grantors who by warranty deed have conveyed land, in which they recite that the conveyance is subject to a certain deed of trust, have a right to sue the grantee and the holder of a second deed of trust, to prove that the note secured by the deed of trust described in their deed has been paid, and that the second as they thought was given to re-place the first, and not as collateral security for an unsecured debt of one of them, and to have the first cancelled, and the second declared to be the only encumbrance

against the land. And especially should the warrantors have a right to sue to cancel the deed of trust described in their deed where the abstract did not inform the purchaser, the examiner or the scrivener of the existence of more than one deed of trust, and both the grantors and the grantee thought there was only one, and that it was the one that had been given to re-place the original deed of trust for the same amount, and the purchaser has paid the one protected by his warranty.

Appeal from Jasper Circuit Court.—*Hon. Joseph D. Perkins,* Judge.

AFFIRMED.

*W. R. Robertson* and *Grover C. James* for appellants.

(1) Plaintiffs having conveyed their entire interest in the real estate and having fully protected themselves against any liability for the deed of trust which they seek to cancel, have neither legal nor beneficial interest in the suit and have no right to maintain same. 21 C. J. 264; 266; Dameron v. Jameson, 71 Mo. 97, 100; Truman v. Chilton, 197 S. W. 346. (2) The plaintiffs having executed and delivered to defendant Obert the warranty deed conveying the real estate in controversy with general covenants of warranty except as to the deed of trust which the plaintiffs seek to cancel, and the defendant Obert having accepted said deed containing such provisions, both the grantor and grantee being able to read and write and having full opportunity to read such instrument before signing or accepting same, neither party should be heard to say that the writing does not contain the agreement stated therein. Cross v. Longsdon, 239 S. W. 1087, 1089; Cantwell v. Johnson, 236 Mo. 575, 600. (3) The proof to justify the relief sought must be so clear, convincing and complete as to exclude any reasonable doubt in the minds of the court. Bross v. Rogers, 187 S. W. 39. (4) In a suit to cancel a note and a deed

of trust securing it, while great deference is given to findings of the trial court, responsibility of finding the facts rests on the appellate court.   Whiles v. Graves, 252 S. W. 943.   (5)   The findings and judgment of the court are against the weight of the evidence and for the wrong party.   (6)   By reason of defendant Obert's inconsistent positions and his failure to avail himself of the information readily open to him, he is not entitled to any relief in a court of equity.   Einstein v. Strother, 182 S. W. 123; Cantwell v. Johnson, 236 Mo. 575.

*W. R. Shuck* and *George V. Farris* for respondents.

(1)   The subject-matter of this litigation is the cancellation of the note and mortgage described in the petition of plaintiffs, and although plaintiffs have sold the land, their interest in having the record cleared is sufficient to enable them to maintain this suit.   Kersten v. Coleman, 144 Pac. 1092; 21 C. J. 267.   (2)   In an equity case, of course the rule is well settled that the appellate court will weigh the evidence and reach its own conclusions as to whether it is of sufficient probative force to sustain the findings.   But if the substantial weight of the evidence sustains the findings the appellate court will not interfere.   Daudt v. Steiert, 205 S. W. 222.

WHITE, J.—Action to cancel note and deed of trust securing same; begun November 30, 1920, in McDonald County, tried on change of venue in Jasper County.

The deed of trust sought to be canceled was executed in 1914 by Laura B. Griffin and S. H. Griffin, conveying to G. W. Smith, trustee, a tract of land in McDonald County, to secure a note to Mary H. Reed, for $1200, payable October 1, 1919.   The note bears interest at six per cent per annum, and sometimes is mentioned in the record as the Reed note, and sometimes as the Griffin note.

It was afterwards taken up and held by the Bank of Wentworth, of which C. W. Moody was cashier.

On April 14, 1919, the Griffins, by general warranty deed, conveyed the land, "subject to trust deed for $1200," to the plaintiff Odessa Lee Henry, wife of O. B. Henry.

On April 24, 1920, Odessa Lee Henry and O. B. Henry, conveyed the land to Albert Obert, defendant, with covenants of general warranty, "except one certain mortgage deed in the sum of $1200 due to G. W. Smith, trustee for Mary H. Reed."

The plaintiffs, claiming the note was paid, bring this suit as warrantors of the title which they conveyed to Obert, making their grantees and the trustee in the deed of trust and the present holder of the note, parties to the action.

On October 6, 1919, six months before the Henrys conveyed the land to Obert, a second deed of trust securing a note for $1200 was executed by Odessa Lee Henry and O. B. Henry, securing to the Bank of Wentworth the sum of $1200. So when the Henrys conveyed the land to Obert it was encumbered by the two deeds of trust, each of which secured $1200, and both of which were afterwards held by the Bank of Wentworth. The warranty, it will be noticed, excludes only one of the mortgages from its operation, so that the Henrys were liable upon their warranty on account of one of the $1200 mortgages.

The petition sets out these different conveyances and alleges that in October, 1919, the plaintiffs were living in Oklahoma; that the Reed mortgage then was held by the Bank of Sarcoxie, having been assigned to it by Mary H. Reed; that the Reed note being past due, October 10, 1919, the Bank of Wentworth and its cashier, Moody, sent by mail to plaintiffs a note and deed of trust for $1200, dated October 7, 1919, requesting plaintiffs to execute and acknowledge the same and return it to the bank; that the bank and C. W. Moody would thereupon cause to be released of record the Reed deed of trust

which the Bank of Wentworth then owned, having taken up and received it from the Bank of Sarcoxie. That the plaintiffs executed said note and deed of trust and returned same to the Bank of Wentworth and to C. W. Moody upon the express understanding and agreement that the bank and Moody would satisfy the record as to the Reed deed of trust. It is further alleged that the bank and Moody wrongfully refused to satisfy the record and to have the deed of trust and note canceled, retaining the same wrongfully, so that there were then outstanding against the said property the two deeds of trust, each securing a note for $1200.

The petition further states that, believing there was only one deed of trust for $1200 against the property, on April 24, 1920, by warranty deed plaintiffs conveyed the land to the defendants Obert, and that the scrivener in writing said deed from plaintiffs to Obert made a mistake and described the Reed deed of trust instead of the last mentioned deed of trust executed by plaintiffs, and that it was the intention of plaintiffs to warrant said title except as to the last instead of as to the first deed of trust. That the Oberts thereafter paid the last mentioned deed of trust and then discovered the existence of the other one, and caused plaintiffs to be arrested, in a proceeding which was still pending in the Circuit Court of McDonald County. The plaintiff, therefore, prayed that the first deed of trust above mentioned be canceled.

It was further alleged that the Bank of Wentworth and said Moody threatened to foreclose the first deed of trust, which they wrongfully and fraudulently held and retained as aforesaid, and the petition prayed that they be restrained from such foreclosure and that the said deed of trust be canceled.

The Bank of Wentworth answered admitting the execution of the several deeds of trust, and alleged that at the time of the execution of the second deed of trust, and long prior thereto, the plaintiffs Henry owed the bank a personal unsecured note amounting to $1150; that in October, 1919, when the bank was pressing the plaintiffs for payment, they "requested of this defendant that it pur-

chase from the said Bank of Sarcoxie the said note secured by the Griffin deed of trust and agreed with this defendant if it would so purchase said note that said plaintiffs would execute and deliver to this plaintiff a second deed of trust upon said land for $1200, which is the second deed of trust referred to in the plaintiffs' said amended petition, and would also permit the said defendant to hold the said Griffin deed of trust and the note secured thereby as collateral security for the said note of $1150 executed by plaintiffs and held by this defendant; and agreeing thereto and acting in pursuance of said request this defendant did purchase the said note so held by the Bank of Sarcoxie, paying the full face value therefor, and the said plaintiffs did in pursuance to said agreement execute the said second deed of trust and this defendant did extend the time of payment of said $1150 note executed to it by plaintiffs and now holds the same, no part of which has been paid except the interest up to September 9, 1920.''

The answer then tendered the Griffin deed of trust and note on condition that the plaintiffs pay the note for $1150.

Moody filed for separate answer a general denial. The Oberts filed a separate answer admitting the facts alleged in plaintiff's petition and prayed for judgment against the plaintiffs for $1200 and interest, if the court should find the facts and allegations of the petition to be untrue.

From what has been said it will be seen that the issues are:

(a) Whether the second deed of trust executed by plaintiffs was intended to re-place and cause cancellation of the first deed of trust, as the plaintiffs claim; or,

(b) Whether there was an agreement between the plaintiffs and Moody, representing the Bank of Wentworth, that the first deed of trust should be retained as collateral to the unsecured note of $1150, which the plaintiffs owed the bank.

(c) Defendants make the point that the plaintiffs, having conveyed the land, expressly excluding from the

302 Mo. Sup.—44.

effect of their warranty the deed of trust sought to be canceled, had no right to sue, having no interest in the subject-matter of the suit.

Since the chancellor found the facts in favor of the plaintiffs and we must pass upon the facts, we will set out at some length the evidence bearing upon these several propositions.

The plaintiff, O. B. Henry, explained the different transactions mentioned above and said the Reed note, owned by the Bank of Sarcoxie, became due September 26, 1919, about the time the Henrys were preparing to move to Oklahoma. He said:

"Had a talk with Mr. Moody before leaving Wentworth about the Griffin deed of trust. Told Moody 'when the mortgage came due for him to take it up at Sarcoxie and mail me a new mortgage at Sapulpa and I would sign the mortgage he sent me to take care of the mortgage at Sarcoxie' and he said, 'All right. I will take care of that for you;' my wife was with me; there was nothing said about him holding the mortgage, only I had to send him a mortgage from Sapulpa to take up the mortgage at Sarcoxie; the Bank of Wentworth would carry the loan for me instead of the Bank of Sarcoxie, because I would rather have the loan carried at Wentworth than Sarcoxie, because it was handy.' "

He testified further that while he was living at Sapulpa, in October of that year, Moody sent him a letter with a mortgage to be executed. The letter had been lost. "I don't remember exactly the words, but he said he had taken up the mortgage at Sarcoxie and was sending me this mortgage to take the place of it."

The witness and his wife executed and returned the mortgage with a check of $79.19 to pay the interest up to date. In this connection it was shown that Moody drew a check, dated September 4, 1919, for $1272, which he explained was to pay the Bank of Sarcoxie the note and accrued interest. The additional $5.19 which he charged Henry included the cost of bringing the abstract down to date at that time.

Mrs. Odessa Henry who was present when her husbank talked with Moody about taking up the Reed note testified that she and her husband saw Moody just before they went to Sapulpa, and then said:

"We went in there and Mr. Henry told him we were going away and for him to take care of this note when it came due and he would give him another mortgage to satisfy, this other deed at Sarcoxie. After they went to Sapulpa they heard from Mr. Moody in regard to a mortgage to sign, meaning plaintiff's Exhibits 'B' and 'C'; received them through the mail with a letter. The substance of the letter was 'that he had taken up this deed, this Griffin trust deed up, and was sending us this mortgage to sign, and it would be necessary for us to go before a notary and to return this at once,' and stated the amount to be sent with it, and I sent it."

Albert Obert testified that when he bought the land two abstracts were furnished him, one to each forty of the eighty acres. These abstracts showed only the first $1200 mortgage; that he afterwards paid the second one, supposing that to be the one mentioned in his deed and later learned by letter from Moody that the Bank of Wentworth held another one. Then he had the plaintiffs arrested. He bought the land for $4000 and paid $2800 in cash, and took the place subject to one $1200 mortgage.

O. B. Henry further testified that after he had sold the land to Obert he had a letter from Mr. Tener, a lawyer at Pineville, and also from McNabney, a real estate man, informing him there was a flaw in the title. He learned that Moody was holding both mortgages, "and so I went up and asked him, and he says, 'Yes.' I says, 'Charlie you have taken my $1150 note and placed it against that $1200 mortgage on that place down there without my knowledge and consent,' and he says, 'Yes.' I says, 'Why did you do that?' He says, 'Because I have a right to.' Bob McReynolds and Orin Henry, my brother, heard that conversation."

O. F. Henry, a brother of the plaintiff O. B. Henry, testified that he was present, as was also Mr. Reynolds,

and heard the conversation spoken of by O. B. Henry, and he said: ''Mr. Henry asked Mr. Moody if he did not do that unbeknownst to him, and he said he did. They were talking about the mortgage of the McDonald County place.''

Robert McReynolds who, O. B. Henry said, was present at the time, testified that he was present when there was conversation about a mortgage that was supposed to have been released of record. He said he could not repeat the conversation, but Mr. Henry demanded of Mr. Moody the return of a certain paper, which Mr. Moody refused. The paper was a mortgage. There were two mortgages and there should have been only one, and in the conversation Mr. Henry said, ''I did not know that this second mortgage was in existence,'' or something to that effect, and he said to Mr. Moody: ''You did that unbeknownst to me,'' and Mr. Moody said, ''Yes.''

Mr. Moody several times emphatically denied that the second mortgage was made to take the place of the Griffin deed of trust. He testified that Henry owed him $1150 on a personal, unsecured note that he was pressing for payment; that Henry came to him and asked him to take up the $1200 note and mortgage held by Mary H. Reed. ''He says, 'I don't like those fellows in Sarcoxie, and that mortgage will be due pretty soon, and if you will take it up and carry it and my personal note, you can hold the Griffin trust deed as collateral to secure the personal note and I will execute you a new one to reimburse you for the $1200 you paid for the Griffin trust deed.' ''

Moody then testified that Henry was getting ready to move; that he told him he was not loaning any money. Further in his testimony he said Henry told him he would place the Griffin deed of trust back of that $1150 note as collateral, ''if I would agree to extend it for fifty or sixty days, and I told him that I would.'' Witness then identified the check of $1272 with which he took up the Reed note and deed of trust and marked the word ''Collateral'' on it.

In corroboration of his testimony U. P. Moody testified that he was present when Henry came in to request the taking up of the Reed mortgage. He said they were talking about collateral and about a $1150 personal note of O. B. Henry. He said he could not give the language that was used, but that Henry was asking about holding the note given as collateral and Henry said it would be all right. U. P. Moody also testified that he was present later at the time of the conversation between O. B. Henry and C. W. Moody. One McReynolds and O. F. Henry were present, and he said he did not hear any statement by Henry to the effect that Moody held the Griffin deed of trust unbeknownst to him, to which Moody assented. The witness on cross-examination said that such conversation might have taken place when he went to lunch. U. P. Moody thought he was present when McReynolds and O. B. Henry were talking, but didn't hear the conversation testified to by O. B. Henry.

This was all the evidence bearing directly upon the agreement which the parties entered into at the time O. B. Henry requested Moody to take up the Reed mortgage.

The two abstracts covering the land were certified October 4, 1919, and of course did not show the second deed of trust which was executed October 7, 1919. Henry first entered a contract with Obert April 20, 1920, "to convey him the land subject to the $1200 mortgage." He testified that he knew of only one $1200 mortgage on the land, and thought of course it was the second one which he himself had executed. When he conveyed the land to Obert, April 24, 1920, the abstracts were submitted to Obert, showing only the Reed deed of trust; G. W. Smith, trustee, who drew the warranty deed had only the abstracts and the contract, and very naturally mentioned in the deed the one mortgage which the abstract showed. Plaintiff said that so far as he knew he executed the deed without reading it; he paid no attention to it. A letter of his in the record shows that he was wholly uneducated. He testified that he thought he was excluding from his warranty the second deed of trust instead of the first.

The note secured by the second deed of trust exe-
cuted by the Henrys October 7, 1919, was paid by check
dated June .29, 1920. The check was for $1284. The
deed of trust recites that the interest on the $1200 note
was seven per cent; the note itself provides for interest
at the rate of 8 per cent. Less than nine months had
elapsed from the date of the note to the time when it was
paid. The interest accrued at that time at eight per cent
would have been $72, and at seven per cent would have
been $63, but Obert was obliged to pay $84 in order to
procure the release, showing that Moody charged a full
year's interest at seven per cent at a time when he claimed
he was not loaning money, but drawing in his loans.

Other facts will be noted in considering the points
urged for reversal. On this evidence the trial court found
the facts and rendered judgment in favor of the plain-
tiffs; defendants appealed.

I. Did the facts show that the second mortgage exe-
cuted by the plaintiffs was given for the purpose of tak-
ing the place of the Reed deed of trust? We do not see
**Purpose.** how it could be questioned that such was its pur-
pose. The answer of the Bank of Wentworth
set out above shows that the second deed of trust was to
re-place the other. The statement made by the appel-
lants in their brief was that the agreement between the
two was that Henry and wife "would execute their note
for $1200 (the amount of the principal of the Griffin deed
of trust) to the Bank of Wentworth, to run for one year,
and secure the payment of same by their deed of trust
encumbering the McDonald County land, to *represent the
amount paid by the Bank of Wentworth in taking over
the Griffin deed of trust.*" This statement is coupled
with the condition that the first mortgage should be held
as collateral.

When the Bank of Wentworth took up from the
Bank of Sarcoxie the Reed deed of trust and note Henry
paid all the interest up to date, including the fee for
bringing down to date the abstract, so that the mortgage
which he executed covered the exact amount then due on

the Reed mortgage. Why the appellant should now deny that the second was to re-place the first is difficult to understand. If the second was not to re-place the first then it was entirely without consideration. The first would have been of no value to the Bank of Wentworth as collateral to another debt unless it had been re-placed by the second mortgage.

It is claimed, however, that the proof failed to show the agreement went further, to the effect that the bank was to *cancel* the first deed of trust. It is perfectly apparent that such an agreement as that would be superfluous. If the second deed of trust was to take the place of the first with no further agreement, that *ex necessitate* required a cancellation of the first. That is, the plaintiffs were by that arrangement entitled to a cancellation of the first deed of trust unless the substitution was on the condition that the first should be held as collateral to another debt. So we hold that the evidence shows conclusively and inevitably that the second deed of trust was given for the purpose of taking the place of the first. And that fact entitled the plaintiff to a cancellation of the first unless the arrangement was accompanied by the condition mentioned. All that the appellant has urged in relation to the requirements of the law that the proof of a contract of that kind must be clear and conclusive is fully met by the facts.

II. We come now to the alleged condition on which the first deed of trust was taken up and re-placed by the second; that the first was to be held as collateral for the unsecured debt of $1150.

Condition.

This was an affirmative defense which the defendant bank pleaded, and must prove in order to defeat the plaintiffs' claim. The plaintiffs assert an agreement which the proof established beyond reasonable dispute. The defendants assert an arrangement—a condition attached to the agreement—which would defeat the effect of the contract claimed by plaintiffs, and the defendants must prove it. It will be noticed that in evidence set out above, C. W. and U. P. Moody each swore their version

of the agreement was made before the Henrys moved to Oklahoma. O. B. Henry and Mrs. Odessa Henry swore with equal positiveness that the agreement did not include that condition.

Other evidence upon the subject came up after the trouble occurred. The plaintiff O. B. Henry testified that in a conversation with C. W. Moody in the presence of O. F. Henry, Robert McReynolds and O. P. and U. P. Moody, C. W. Moody admitted that he had used the first mortgage as collateral without his (O. B. Henry's) knowledge or consent. This was corroborated by McReynolds and O. F. Henry, while the three Moodys denied it. Some of the witnesses on each side are rather vague and indefinite about what was said, but no doubt they referred to the conversation between the two principals and gathered something of its import. So far as the actual testimony bearing upon the arrangement was concerned the evidence seemed to be equally divided between plaintiffs and defendants. The chancellor believed the plaintiffs' evidence. There are some circumstances which tend to corroborate the plaintiffs. Moody who himself wrote the second mortgage was unable to explain why he did not insert in it that it was subject to a prior mortgage. He was asked why, at the time Obert paid off the second mortgage, he did not inform Obert that he held the first mortgage as collateral, and why he withheld that information from Mr. Obert for so long. He said: "I thought I was going to get the money on the note every little bit was the reason," and he thought Mr. Henry would pay it. It was September 25, 1920, that Moody notified Obert that he held the second mortgage as collateral.

When Mr. Moody was on the stand he was asked:

"Q. Did you at any time tell him (O. B. Henry) and his wife that you would take this Griffin deed of trust and send them a new one to take its place; did you tell them that or words to that effect? A. No, oh, no."

In another place he testified:

"I will ask you to state whether you did or did not state in that letter it was to be given in lieu of and take the place of this Griffin deed of trust? A. I did not."

Mr. Moody in his letter of October 21, 1920, to Obert, in which he first called attention to the unsecured $1150, and stated he held the Griffin deed of trust as collateral, used this expression:

"We bought the Griffin deed of trust from Mary Reed and Mr. Henry and wife gave us *another one of like amount to take up the Reed trust deed*, with the understanding that we were to hold the Griffin trust deed to secure his personal note."

In other places he made similar emphatic statements. His emphatic denial of what was a patent fact, which he himself alleged in his answer, showed a lack of frankness in dealing with the subject that possibly affected the trial judge in weighing his testimony.

Although we must weigh the evidence, we think giving the chancellor the deference usually accorded, he was justified in finding, as he did, that the parties did not make the agreement that the first deed of trust was to be held as collateral to the personal note, the burden being upon the defendants to establish that fact. It is quite evident that Henry did not understand it that way, otherwise when he made his conveyance to Obert he would have mentioned it, or have protected himself against such a result. It is not sufficient for the defendant to prove that Moody so understood it, and the parties misunderstood each other. Their minds must have *met* upon that proposition; both must have understood it alike. If the principle of law contended for by appellants is correct, then it was for them to prove their agreement pleaded in defense by clear, preponderating testimony. They have not met that test.

III. The appellant, however, claims that the plaintiffs have no right to sue. They conveyed this land by **Right to Sue.** warranty deed and excluded from their warranty the very deed of trust they seek to cancel; having parted with the title they have no interest in the property.

The rule is that in an equity proceeding any person having an interest in the subject-matter of the action may be made a party. A grantor, for instance, is a neces-

sary party in an action affecting the title to land which
he has conveyed with covenants of warranty. [21 C. J.
263, l. c. 266-267; Florida Land-Rock Phosphate Co. v.
Anderson, 50 Fla. 501, l. c. 514-515; Kersten v. Coleman,
144 Pac. 1092.] In this case the plaintiffs conveyed this
property to Obert with covenants of warranty. The land
was encumbered by a deed of trust, covered by that war-
ranty—the second deed of trust. The plaintiffs thought
they were excluding the second one from the warranty
in their deed. The abstracts didn't inform the purchaser,
the examiner, nor the scrivener, of the existence of more
than one deed of trust.. The contract which the plaintiff
had entered into four days before the conveyance showed
the agreement to convey, subject to a deed of trust, which
was all that the Henrys thought was against it; and with
that contract and those abstracts the scrivener drew the
deed. It is not unusual for people to sign a deed and
execute it without reading with care to ascertain what is
in it. The mistake then was mutual between Henry and
Obert, for both thought there was only one encumbrance.
Not only do they testify but the circumstances all tend
to corroborate that they made that mutual mistake.
Obert paid the second deed of trust, making the same
mistake in mixing the identity of the two deeds of trust,
although his deed mentioned and excluded from the war-
ranty the first.

If Henry's claim is correct, as found by the court,
that the second deed of trust must re-place the first, when
he conveyed to Obert, warranting the title without ex-
cepting one deed of trust, he undoubtedly would have
had a right to bring such suit to have canceled the one
covered by his warranty. The fact that he excepted
the wrong deed of trust from his warranty didn't lessen
his obligation to Obert to clear the title. He had a right
to bring suit to clear the title so as to make good his war-
ranty. A mistake was made by both. Obert paid the
mortgage protected by his warranty instead of the one
excepted from the operation of the warranty.

In any view of the case we think the plaintiffs had a right to sue.

Accordingly the judgment is affirmed.   All concur.

