262 S.W.2d 854 (1953)
SCHAEFFER
v.
MOORE et al.
No. 43657.
Supreme Court of Missouri. Division No. 1.
December 14, 1953.
*856 Suelthaus & Krueger, G. L. Seegers, St. Louis, for appellants.
Boedeker & Weil, Clayton, Ziercher & Tzinberg, Erwin Tzinberg, Clayton, for respondent.
VAN OSDOL, Commissioner.
Action to try, ascertain and determine title to eleven lots in Times Beach, St. Louis County. The lots had been sold at sheriff's sale under execution issued upon a judgment rendered against Irene Moore, defendant and cross-claimant in the instant action, who had acquired the property from one Rose M. Schenberg by warranty deed in 1949. At the sheriff's sale, January 15, 1951, Roy McKittrick was the "highest and best bidder" (he was in fact the only bidder) and acquired the property at his bid of $175. He knew nothing about the property or the condition of the title. He was acting in behalf of his son, attorney for the judgment creditor. Thereafter the purchaser, McKittrick, sold the property for $1,000 to Morris Benson, and Charles Dralle (now deceased), partners doing business as Benson-Dralle Realty Company, and, at the direction of the purchasers, Benson and Dralle, McKittrick conveyed the property (by quitclaim deed dated January 24, 1951) to plaintiff, a straw party.
Benson and Dralle sold the property October 27, 1951, to Norma Morgan, for $4,500, plaintiff conveying the property to Norma by quitclaim deed of that date. Defendant Norma Morgan paid $200 of the purchase price in cash and she and her husband, Charles, executed notes aggregating $4,300 (secured by deed of trust to Morris Benson as trustee for plaintiff, Frances Schaeffer) for the balance of the purchase price.
Plaintiff in her petition, filed May 29, 1951, alleged that a certain deed executed by several grantors (named "Blomes") conveying some of the lots to Rose M. Schenberg had been lost or destroyed; and that one John Summers claimed some interest in the property. Plaintiff also alleged defendants (necessarily including defendant Irene Moore) claimed some interest; the nature of their claims, it was alleged, was unknown to plaintiff. Notice of the pendency of the action was by publication. At the time, defendant Irene Moore was in California; but, March 26, 1952, defendant Irene filed her answer and cross-claim alleging that the sheriff's sale "was unlawful, illegal, null and void and of no force and effect for the reason that at the time of said sale the fair market value of said real estate * * * was at least the sum of $5,000.00 and that the sale thereof at said Sheriff's sale for the total price and sum of $175.00 was so greatly inadequate and unconscionable as to amount to fraud requiring that said sale be set aside." Defendant Irene Moore also prayed for the cancellation of the conveyances subsequent to the sheriff's deed, including the deed of trust and notes secured, and for a decree determining title to be in her. Pursuant to the cross-claim, Norma and Charles Morgan; Morris Benson, trustee, and Frances Schaeffer, beneficiary in the deed of trust; and the unknown holders of the notes secured were added as parties defendant and summoned. These parties defendant, including Morris Benson and Charles Dralle, actual owners and holders of the notes, filed answers. At the conclusion of the trial of the issues raised by the pleadings, it was found, ordered and adjudged by the trial court that the sheriff's deed "is fraudulent, null and void and the same is cancelled, set aside and for naught held," and the subsequent conveyances, including the deed of trust, were ordered cancelled. Plaintiff, and defendants Norma Morgan, Charles Morgan, Morris Benson (trustee), Morris Benson, and Charles Donald Dralle (personal representative of Charles Dralle, deceased) have appealed.
Appellants initially contend that McKittrick, purchaser at the sheriff's sale and grantor in the conveyance to plaintiff, was a necessary and indispensable party; and that the trial court should have refused to enter a decree until McKittrick had been made a party to the action. Appellants *857 further contend that the parties to whom the property had been conveyed subsequently to the sheriff's deed were bona fide purchasers and the relief of cancellation on the ground of the inadequacy of consideration paid by the purchaser at the sheriff's sale should not have been granted, particularly in the absence of any evidence or finding of fraud or collusion to commit fraud on the part of appellants, subsequent purchasers. Furthermore, appellants contend that defendant Irene Moore was guilty of laches, and was estopped by her conduct to set aside the conveyances; and that, in any event, the consideration paid at the sheriff's sale, in view of the state of the title, was not so inadequate or unconscionably low as to amount to constructive fraud.
Cross-claimant, defendant, respondent, Irene Moore, testified that she went to California in December 1949. She had been ill, and went to California to see if she could recuperate. She had purchased the lots (sometimes referred to as the "Eureka Place," and sometimes referred to as the "club") in Times Beach, paying $5,000 in cash. She acquired title by warranty deed from Rose M. Schenberg in 1949; she lived in the two-story building on the property about two months, leaving for California in December of that year. In March or April of 1950 she leased the property to Norma and Charles Morgan, third-party defendants, appellants, for $22.50 per month. Norma and Charles took possession and lived on the second floor and conducted a tavern business on the first floor of the building. By letter of June 8, 1950, Irene wrote Norma and Charles telling them of her continued illness and advising them, as follows, "please forgive me for not writing sooner but I'm sure you would if you knew how sick I've been, really you couldn't have read what I'd have written as I've been a complete wreck since I was there I just hope you can make a go of your business but until I get better than I am now you can do business with Plummer You see now I have to have some one take care of my business in fact he has spent all his money paying Dr bills for me and I am not very much better than when I started so until I get well enough to come back there you can send the rent money to (W. O. `Bill') Plummer (then in Fort Worth, Texas) and it will be O. K. with me." Irene testified she did not know how much rent Plummer collected "because I didn't hear from him."
Irene testified that she first learned that the property had been sold in February 1952. She had written Norma asking her if she would like to own the property. Norma replied by letter of February 19, 1952, "You asked me if I would like to own the club, well I don't know if Bill told you or not, but I do own it. The sheriff sold it to pay that suit that Lucille Kelly had against you, and then I bought it from the real estate company. They keep asking me where you are, and I tell them I don't know, which I didn't until you wrote to me." Irene, in March, came to St. Louis to investigate. She employed counsel, and, as stated, filed her "Separate Answer and Cross-bill," March 26, 1952. It could be found that Norma had advised Plummer in April 1951 that the property had been sold under execution and that Plummer did not advise Irene, because the evidence shows that Plummer wrote Norma in April 1951, "Received your letter and see what you said about the place being sold. I had an investment in the Eureka place so it doesn't sound so good to me. Irene is still helpless and I have not told her as yet. Norma if you hear anything please let me know. * * *"
Cases cited by appellants are but of little value in supporting appellants' initial contention. In Henry v. Bank of Wentworth, 302 Mo. 684, 259 S.W. 462, plaintiffs, who had conveyed the land by warranty deed, had the right to maintain the action to cancel a deed of trust which, due to mutual mistake, was covered by their covenants of warranty. See also Collins v. Lindsay, Mo.Sup., 25 S.W.2d 84, wherein plaintiff had conveyed her interest in lands to her brother by warranty deed. She had sufficient interest to entitle her to maintain the action to cancel her former deed to defendant. In Kidd v. Schmidt, *858 345 Mo. 645, 136 S.W.2d 72, it was alleged by defendant that he had caused one Florence English (who was not a party to the action) to execute the deed which defendant sought to have cancelled. Defendant alleged that, before the conveyance, he was the owner in fee simple and in possession. He asked for an adjudication of title. The trial court set the deed aside and divested plaintiffs of all title but did not vest title in defendant. Now Florence may have conveyed by warranty deed, but, whether or not her deed contained covenants of warranty, she apparently had some interest before she executed the deed and was a necessary party in the complete adjudication of title.
Although these cases, as we have said, are of little value in supporting appellants' contention that McKittrick, purchaser at the sheriff's sale, was a necessary and indispensable party to the instant action, we recognize that it is the policy of equity to bind everyone by a decree in an action "who has any right or interest in the subject or object of the suit, which, if he was left free, he might thereafter assert to the prejudice of the parties bound to perform the decree; that is to say, to leave no one exempt from the force of the decree who by subsequently bringing forward some claim against the parties to the litigation, might cause them to suffer a loss in consequence of having done what the court ordered. It is also the policy of equity to do justice as a whole instead of by piecemeal. But the most fundamental and controlling doctrine of equity procedure is that no decree will be entered which will materially and necessarily affect any person's interest in the property involved in the litigation, unless he has been made a party to the suit and afforded the opportunity to be heard in defense of his rights. Those doctrines have given rise to the rule `that all persons materially interested, either legally or beneficially, in the subject-matter of a suit, are to be made parties to it, either as plaintiffs or as defendants, however numerous they may be, so that there may be a complete decree, which shall bind them all.'"
Leyden v. Owen, 150 Mo.App. 102, at pages 114-115, 129 S.W. 984, at pages 987-988; Kidd v. Schmidt, supra. And more recently this court has said that, in an action to set aside a foreclosure sale and to cancel the trustee's deed, ordinarily all parties to the instrument sought to be cancelled should be made parties to the action, but this is not true where "it is obvious that the one not joined has no interest whatever in the subject matter" of the action. Casper v. Lee, 362 Mo. 927, 245 S.W.2d 132; 12 C.J.S., Cancellation of Instruments,§ 52, pages 1028-1029.
In the instant case McKittrick, purchaser at the sheriff's sale, conveyed the property purchased to plaintiff. McKittrick conveyed by quitclaim deed. He only conveyed whatever interest he had acquired at the sheriff's sale. The trial court's decree cancelled the sheriff's deed to the purchaser at the sheriff's sale and all subsequent conveyances. McKittrick has no interest in the land, title to which is in controversy. He has parted with whatever interest he had in the property. It would seem that no party to this action may assert any claim arising out of the subject matter against him because of any assurance or warranty of title, nor has he any claim as against subsequent grantees to whom he has quitclaimed whatever interest he had.
Addressing ourselves now to the contention of appellants that parties grantee in conveyances subsequent to the sheriff's deed were bona fide purchasers. The contention is ruled adversely to appellants. We have carefully read the case of Elliott v. McCormick, 323 Mo. 263, 19 S.W.2d 654, in which case plaintiff-appellant sought to set aside a judgment and sale under execution and subsequent conveyances on the ground, among others, of the gross inadequacy of the consideration paid at the execution sale. The purchaser at the sheriff's sale had sold and conveyed the property in controversy to defendants-respondents Baker who conveyed to defendants-respondents McCormick, bona fide purchasers without notice. The purchasers *859 were nevertheless bona fide purchasers, although the record of the sheriff's deed (in the chain of title) recited the consideration (allegedly inadequate) paid by the original purchaser at the sheriff's sale. The defendants-respondents had bought the property in apparent good faith, for a valuable consideration, and had received a warranty deed. With respect to the contention of notice of outstanding equitable claims to a remote purchaser, the case seems to be authority for a rule that, in an attack on the title of a remote purchaser, the inadequacy of the bid at an execution sale cannot be invoked to destroy the title "on the ground that this, per se, put him on notice." This doctrine was that of the Supreme Court of Mississippi as stated in the opinion of that court in Hart v. Gardner, 81 Miss. 650, 33 So. 442, 443, 497. Nevertheless, the recorded sheriff's deed, in our case, reciting the consideration, was constructive notice of the contents thereof. Section 442.390 RSMo 1949, V.A.M.S. This, in itself, was not sufficient to put remote purchasers on notice. Elliott v. McCormick, supra. Yet it must be said that the fact that the deed recited the property had been sold for $175 at the sheriff's sale was a fact of which subsequent purchasers had constructive notice. Section 442.390, supra. And, in our case, the plaintiff acquired legal title from the original purchaser at the sheriff's sale by quitclaim deed. Although they were the actual purchasers from McKittrick, Benson and Dralle caused the legal or record title to be vested in plaintiff, their straw party. Likewise defendant Norma Morgan acquired title from plaintiff by quitclaim deed. In McAboy v. Packer, 353 Mo. 1219, 187 S.W.2d 207, 209, this court stated that the essential elements which constitute a bona fide purchase are threea valuable consideration, the absence of notice, and the presence of good faith. A good faith purchaser for a valuable consideration is not charged with notice of outstanding equities or interests when his title is through a full and complete, general warranty deed. But, "a grantee in a quitclaim deed takes title subject to and with notice of any prior outstanding equity or claim, not required to be recorded, and is not a purchaser without notice." See also Mann v. Best, 62 Mo. 491; Hope v. Blair, 105 Mo. 85, 16 S.W. 595; Zweigart v. Reed, 221 Mo. 33, 119 S.W. 960; Hart v. Parrish, Mo.Sup., 244 S.W.2d 105; Annotations, 44 A.L.R. 1269; 59 A.L.R. 641; 162 A.L.R. 560-562. Moreover, we believe it may be reasonably inferred defendant Norma Morgan, who was in possession as tenant of cross-claimant "Irene, knew as late as April 1951 that Irene did not actually know her property had been sold at sheriff's sale. Defendant Norma constructively knew the property had been sold by the sheriff for $175, yet, in October, Norma undertook to buy the property for the sum of $4,500. We observe that Benson and Dralle (who were the actual purchasers from the successful bidder at the sheriff's sale and who are now the actual owners and holders of the note secured by the Morgan deed of trust) had instituted an action through their straw party, plaintiff, in whose petition it was alleged, in effect, that Irene Moore claimed some interest in the property. We also observe defendant Norma Morgan (and her husband, defendant Charles) had entered into a contract to purchase the property from Benson and Dralle, yet Norma acquired title from another, a straw party, who, as stated, conveyed by quitclaim deed. It has been said that real estate transactions "made through straw men and ghosts should always be viewed with suspicion." Ryan v. Stubblefield, Mo.Sup., 100 S.W.2d 444, 446; Conrad v. Diehl, 344 Mo. 811, 129 S.W.2d 870; Godwin v. Gerling, 362 Mo. 19, 239 S.W.2d 352.
A question of laches, being a question of fact, is to be determined from all of the evidence and the circumstances adduced at the trial. "While statements are to be found in some of the cases intimating that unreasonable delay, and mere lapse of time, independently of any statute of limitations, constitute a defense in a court of equity, the generally accepted doctrine appears to be that laches is not like limitation a mere matter of time, but is principally a question of the inequity of permitting a claim to be enforced, this inequity *860 being founded on some change in the condition or relations of the property or the parties. Where no one has been misled to his harm in any legal sense by the delay, and the situation has not materially changed, the delay is not fatal. Laches in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right." Vol. 2, Pomeroy's Equity Jurisprudence, 5th Ed., § 419d, p. 177; In re Thomson's Estate, 362 Mo. 1043, 246 S.W.2d 791, 29 A.L.R.2d 1239; Jones v. McGonigle, 327 Mo. 457, 37 S.W.2d 892, 74 A.L.R. 550. However, lapse of time is an element entering into the doctrine of laches. Jones v. McGonigle, supra. And, while it has been said that a court of equity will refuse to act where, during an inexcusable delay, third persons have acquired rights in the subject matter which would be injuriously affected by the granting of relief, this rule applies especially in favor of bona fide purchasers of the property without notice of the adverse claim of a plaintiff. 30 C.J.S., Equity, § 118, page 542.
In our case appellants desire to measure the lapse of time and consider the changes of condition of the parties with reference to the subject matter of the action from the time of the original action consummating in the judgment and execution under which the lots were sold. However, we are of the opinion that respondent's claim, as stated in her cross-petition herein, accrued when the land was sold pursuant to the judgment and execution, January 15, 1951. It was over fourteen months until respondent filed her cross-claim March 26, 1952. It has been observed that appellants Benson and Dralle purchased the property and caused the legal title thereto to be vested in their straw party, plaintiff, January 24, 1951, nine days after the sheriff's sale; and that appellant Norma Morgan bought the property less than ten months later, October 27, 1951. Respondent Irene, at and after the sheriff's sale, was in possession of the property through her tenants, appellants Norma and Charles. We shall assume, but we do not decide, that respondent Irene had designated Plummer as her agent with authority to transact her business relating to the property to the extent that he had a duty to report to her his information of the sheriff's sale so that the information that the property had been sold which Plummer received from appellant Norma was imputable to respondent Irene. This information or notice was communicated by appellant Norma to Plummer sometime in April 1951 so that the lapse of time from April 1951 to the time that appellant Norma purchased the property on October 27th of that year was approximately six months, and, even at this latter date, it could be reasonably inferred appellant Norma had no reason to believe that Plummer had communicated to Irene that the land had been sold. As we have noticed supra, appellant Norma constructively knew the amount of the purchaser's bid at the sheriff's sale, although it seems she must have considered the property was worth $4,500. Taking these circumstances into account, as well as the short lapse of time, we believe we should not say that appellants in good faith acquired their alleged interests or changed their positions because of respondent's delay so as to be entitled to invoke the equitable doctrine of laches.
Ten of the eleven lots, title to which is in controversy, are 100 feet long and have an approximate total frontage of 180 feet on Riverside Drive, and two lots, of irregular shape, front at angles along Blakey Road. The eleven lots front about 300 feet from the Meramec River. "It is close to the river, is right off the highway and is a beautiful picnic spot." The property is subject to overflow. A two-story frame building, 25' x 35', is situate on the lots. In January 1951 the building was "in *861 somewhat of a run-down condition." The building was built twenty-five or thirty years ago. Apparently the lower floor is one or more rooms arranged for business purposes. There are four small rooms on the second floor. The house was not "modern" (in January 1951). Norma and Charles Morgan had expended $252 in repairs and in erecting a chimney and installing electric wiring. Of this money, only $82.50 was expended after the sheriff's sale January 15, 1951. An expert on real estate values, witness for cross-claimant, testified the property had a market value of approximately $5,000 on January 15, 1951; he said the rent, $270 per year, was too lowon $22.50 per month basis "it was rented as a residence, and it was more of a commercial property. * * * In other words, it was rented improperly." Defendant Charles Dralle testified the reasonable market value was $2,500 providing there had been "no cloud on the title." Upon being questioned by the trial chancellor, defendant Dralle said there had been considerable work, attorney's fees and other expense in clearing the title of the apparent claim of Blomes and Summers. Cross-claimant had paid $5,000 for the property in 1949; and, in the sale to defendant Norma in October 1951, Norma undertook to pay $4,500 for the property. Upon this evidence the trial chancellor was justified in finding, as he did, that the property was of the reasonable market value of $4,500 on January 15, 1951, and that the record interest of cross-claimant Irene was of the value of $3,750. Considering the reasonable market value of the property to have been $3,750, the consideration paid, $175, by the purchaser at the sheriff's sale, was but approximately 4.7% of its value. A bid at the sale and a consideration in such an amount for a property of such value was so grossly inadequate as to shock the conscience and justified the cancellation of the sheriff's deed on the ground of fraud. Wieser v. Linhardt, Mo.Sup., 257 S.W.2d 689. See also Kelso v. Hubble, Mo.Sup., 163 S.W.2d 926; Johnson v. McAboy, 350 Mo. 1086, 169 S.W.2d 932; Swain v. Boeving, Mo.Sup., 175 S.W.2d 591; and Davis v. Johnson, 357 Mo. 417, 208 S.W.2d 266.
The judgment should be affirmed.
It is so ordered.
LOZIER and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.
All of the Judges concur.